No. 42,668

GALE HUBER, ROY LASSEN, WINIFRED JENSON, GLEN JOHNSTON, F. A. LOMAN, LEROY ELMORE, HOLLIS D. KEMPER, HOMER B. KEY, ALBERT JENSON and BESS LASSEN, In Behalf of Themselves and in Behalf of Others Similarly Situated, *Appellants*, v. F. B. THORN, JESSE VARDAMAN, MAYNARD WILLIS, LESTER ARVIN, O. C. KING, GENE BENSON, CLAYTON MAMMEL, PAUL SPEARS, PRESTON HUSTON, SID THOMAS, IVAN WHITTEN, DICK ABEL, ED NIKKEL, BOB POWELL, NOBLE C. GIFFORD, BILL HOLLADAY, C. A. BELL, ORVILLE EBY, PEARL SLOVER, DOROTHY WATERFIELD and All Other Individuals Similarly Situated, *Appellees.*

(371 P. 2d 143)

Opinion filed May 5, 1962.

*Verne M. Laing,* of Wichita, and *Buford E. Braley,* of Kansas City, argued the cause, and *Lester L. Morris, Ferd E. Evans, Jr., Ralph R. Brock, Joseph W. Kennedy, C. Robert Bell,* and *Charles J. Woodin,* all of Wichita, were with them on the briefs for the appellants.

*Carl T. Smith,* of Wichita, argued the cause, and *W. A. Kahrs* and *Robert C. Foulston,* both of Wichita, were with him on the briefs for the appellees.

The opinion of the court was delivered by

JACKSON, J.: This appeal involves a most regrettable schism in the First Baptist Church in Wichita. The appellants who were the plaintiffs below all being members of the church brought an injunction suit against other members of the church who had prevailed at two church meetings. Plaintiffs alleged that defendants were bound upon a course leading to a departure from the historical customs and tenets of the First Baptist Church in Wichita in that defendants had voted to withdraw from the national American Baptist Convention and from the co-operating Kansas Baptist Convention and the Wichita Association of Baptist churches.

Plaintiffs alleged that they being the members of the church who were still true to the tenets and customs of the church were entitled to claim the property of the church as against the defendants who were departing from the tenets and customs, and claimed that if defendants persisted in the wrongful course, plaintiffs be declared to be the sole owners of the church property. The property is said to be worth some two million dollars above existing indebtedness, so that the importance of this case is not to be gainsaid.

The lower court after consideration of the facts held for defendants and denied plaintiffs any relief.

The appeal does not present any great question as to the nature of the facts involved. The question is, was the trial court correct in the interpretation of the meaning of the facts? In passing, it may be said this court has learned a considerable amount of detail concerning the Baptist churches of the United States.

Almost all school boys remember that Roger Williams was the first great Baptist name in American history. He was excluded from Massachusetts colony because he would not accept the teachings of the Puritans of that colony. Those Puritans it may be noted later founded the Congregational Church in the United States.

After leaving Massachusetts, Williams went to Rhode Island and

helped to found that colony and the Baptist Church in this country.

The Baptist Church became one of the most rapidly growing churches in the frontier days and spread to Pennsylvania and later to the south and to the western frontier.

There can be no doubt that one of the firm principles of the Baptist church has been that each church was its own master and might run its own affairs as an autonomous church. Nevertheless, the various churches did have dealings with each other and tended to co-operate in their common worship. As early as 1814, the American Convention for Foreign Missions was organized. In 1824, the American Publication Society came into being, and in 1832, the American and Foreign Bible Society was born.

The above three societies managed the national affairs of the Baptist churches under what came to be known as the Triennial Convention.

As early as 1845, there occurred a schism between the northern and southern churches over the question of slavery. In May, 1845, the churches of the south met in Augusta, Georgia, and founded the Southern Baptist Convention. This branch of the Baptist church has always been conducted efficiently and is now the denomination having the most members in the Baptist family of churches. It may also be noted that all members of the Southern Baptist Convention are known as Southern Baptist Churches.

Both the Britannica and American encyclopedias use the word "denomination" as applying to the various kinds of Baptist churches.

Turning back to the northern churches, they continued to conduct their affairs under the Triennial Convention and its three American societies. It would appear that they were aided in their work by the organization of state and local societies. The Kansas Baptist Convention was organized in 1860, although not incorporated until 1885.

The more local association having charge of the Baptist churches in the Wichita area was first known as the Walnut Valley Association. Later with the growth of the city of Wichita there was formed in 1949 the Wichita Association of Baptist Churches which took over from the Walnut Valley Association the churches of the city of Wichita.

In 1907, the churches of the north formed the Northern Baptist Convention. The organization was incorporated in 1910, and the trial court sets out a part of section 2 of the act incorporating the organization which reads as follows:

"The objects of the corporation shall be to give expression to the opinions of its constituency upon moral, religious and *denomination* matters and to promote *denominational* unity and efficiency in efforts for the evangelization of the world." (Emphasis supplied.)

It would appear that the act of incorporation fully recognizes that what we have in this corporation is the rallying point of the denomination of Northern Baptist churches. In 1950, the name of the convention was changed to the American Baptist Convention.

The First Baptist Church in Wichita was organized in 1872 and was incorporated in 1873. The first pastor was appointed by the Kansas Baptist Convention and the American Mission Society and his salary was paid by the Mission Society. It is further shown that loans were made to the First Baptist Church in Wichita in 1873, in 1878, in 1883 and 1884.

Thus the record is clear that the Wichita church was founded by the denomination of churches now represented by the American Baptist Convention and further that the church took an active part in the denomination until the year 1960. It should be noted that the Kansas Baptist Convention, the Walnut Valley Association and the Wichita Association of Baptist Churches are all integral parts of the denomination represented by the national convention now known as the American Baptist Convention. Mr. W. C. Coleman, a lay member of the Wichita church, had at one time been president of the American Baptist Convention and had always taken an active part in these matters. He died in 1957.

We note that at the time of the beginning of the present suit, the pastor was the Reverend Mr. F. B. Thorn; that Mr. Thorn was educated at Baylor University in the Southern Baptist denomination, no doubt; some of the plaintiffs suggest that after Mr. Coleman's death, Mr. Thorn took less interest in the American Baptist Convention.

On March 9, 1960, a resolution which read as follows was passed by a vote of 1174 to 235—the membership of the church at that time was believed to be something above 4000:

"Resolved, that the Finance Committee of the First Baptist Church be and are hereby instructed to immediately withdraw any and all financial support to the American Baptist Convention or to any of its affiliated organizations that support it under the unified budget of the First Baptist Church for the reason that the said American Baptist Convention and its affiliated organizations are apparently in full support of the policies and plans of the National Council of Churches and that these policies and plans are not in accordance with the faith and practices of the First Baptist Church of Wichita, Kansas."

It will be noted that the fault was found with the National Council of Churches and not specifically with the American Baptist Convention. This alleged fault is beyond the scope of this opinion, but those interested may see an article in Look Magazine for April 24, 1962.

On July 13, 1960, at another church meeting a resolution was passed by a vote of 739 to 294. This resolution read in part as follows:

"1st. The First Baptist Church discontinue its affiliation with the American Baptist Convention and with its related organizations and bodies effective immediately, and

"2nd. That funds now being sent to any organization or bodies affiliated with the American Baptist Convention, specifically Ottawa University, Central Seminary, Sunset Home and the Wichita Association of Baptist Churches be continued as authorized for the balance of the current fiscal year, but that any continuation of such funds beyond this period be reviewed by the Finance Committee and the congregation when the budget of the First Baptist Church is drawn up for 1961, however,

"3rd. Funds being used specifically for the Kansas Baptist Convention for administrative purposes be withdrawn immediately as approved by the congregation of the First Baptist Church on March 9, 1960."

Upon the above record, which has been briefly reviewed, the trial court found that the First Baptist Church of Wichita was an autonomous church; that nowhere in its constitution and by-laws did it provide for affiliation with the American Baptist Convention or its affiliated organs; that the governing body of the church is the congregation or general membership and that the congregation might at any regular meeting transact business by majority vote and pass all resolutions "so long as they do not constitute a departure from the fundamentals of the original tenets, beliefs, rules and practices of the church."

So we have a rather narrow question in the end. Was the court correct in holding that the vote on March 9 and July 13 did not violate any of the tenets, rules and practices of the church?

We are of the opinion that the trial court erred. Even an autonomous Baptist church, like other protestant churches, is apt to have practices, rules and beliefs which do not form a part of the archives of the church after ninety years of operation. Moreover, we believe it to be unusual for the denomination of a protestant church to be specified in its constitution or archives. We feel that the trial court would have some doubt had he realized that here the church was voting to leave the denomination of churches which

had been active in its birth, and in which its members had been prominent for many years.

We note that the defendants have argued that the board of deacons is actively investigating other "conventions" in the Baptist family of churches with the idea of joining one of them. Besides the Southern Baptist Convention and the American Baptist Convention we find only the National Baptist Convention (USA) Inc., and the National Baptist Convention of America as conventions of any size. Both of these denominations are composed wholly of Negroes.

In the encyclopedia we find a number of small denominations of Baptists. In some, from the name, we believe the members take Calvinistic doctrines more seriously than do the members of the Wichita church.

The First Church might join the Southern Baptist group, but then they would have to change the name of their church, a clear indication that they had changed denomination. Or, we suppose the church can remain unaffiliated. We note that certain notices have been carried in the Wichita papers listing the church in that way.

Of course, what we have said above is fortified by what this court has said in former cases. In *Hughes v. Grossman,* 166 Kan. 325, 201 P. 2d 670, the fifth paragraph of the syllabus spoke of a rather small Baptist church and not of the largest church of the denomination in the state. But in that case the court said:

"The record in an injunction action involving the custody, management and control of property belonging to a Baptist church *is* examined, and it is held, that under the facts and circumstances as fully set forth in the opinion, repudiation by the defendants of the national, state and local associations maintained by the churches of the Baptist faith constituted a departure from the original principles, rules and practices of church government recognized by the united body prior to the occurrence of any schism therein and entitled the plaintiffs to injunctive relief perpetually restraining and enjoining the defendants from occupying or possessing the church property and from interfering with the plaintiffs in the management, control, possession or custody of the church, its property or its business affairs." (Syl. ¶ 5.)

The case of *Whipple v. Fehsenfeld,* 173 Kan. 427, 249 P. 2d 638, follows *Hughes v. Grossman,* supra, perhaps on even a clearer set of facts.

However, we believe the rule of those two cases applies to the case at bar. We hold that not even in an autonomous Baptist church may the denomination of the church be changed by a mere majority vote.

In concluding this opinion it is evident from what has been said that the judgment of the trial court must be reversed. Therefore, the judgment appealed from is reversed and the trial court is directed to issue an injunction as prayed for by the plaintiffs. It is so ordered.

WERTZ, J., not participating.