No. 46,603

GOSPEL TABERNACLE BODY OF CHRIST CHURCH, *Appellant*, v. PEACE PUBLISHERS & COMPANY, a Corporation organized and existing under the laws of the State of Arizona, *Appellee*.

(506 P. 2d 1135)

Opinion filed March 3, 1973.

*Thomas E. Joyce*, of Kansas City, argued the cause, and *Cyrus W. Long* and *Wash H. Brown*, also of Kansas City, were with him on the brief for the appellant.

*John C. Eisele*, of Overland Park, argued the cause, and *James C. Thompson*, of Kansas City, and *Lyndus A. Henry*, of Overland Park, were with him on the brief for the appellee.

The opinion of the court was delivered by

Owsley, J.: This is an action to set aside a deed conveying property to defendant corporation and to quiet title to that property in the plaintiff. Defendant prevailed in a trial to the court and plaintiff appealed.

Plaintiff is an unincorporated religious society of Protestant Christians who own church property in the Argentine district of Wyandotte County, Kansas. The church was founded by the Reverend Reynolds Dawkins and is located at 934 Scott Avenue, Kansas City, Kansas.

On March 23, 1964, the deed which plaintiff seeks to have set aside was executed by trustees of plaintiff church, as grantors, to Peace Publishers & Company, as grantee. There was no resolution by the trustees, and no authorization from the congregation preceding the conveyance. The Reverend Dawkins was one of three trustees of the grantor church and the other two trustees signed the deed at his request. Transferred by this deed was title to the church, the parsonage and other real property.

The Reverend Dawkins died in November, 1965, and his successor as president of Peace Publishers found the deed among his papers at the corporate headquarters in Arizona. On June 21, 1968, the deed was recorded.

Transfer of the church property to Peace Publishers became generally known among the congregation and it was discussed and viewed with disfavor at a congregational meeting on January 19, 1969. At a subsequent meeting on January 23, 1969, Carl Hendon and Dorsey Gray resigned as trustees of the church. The congregation then elected five new trustees and they subsequently filed this action. The record does not disclose whether the Reverend McKnight resigned as a trustee.

The property matters of this church have been before this court previously in *Dawkins v. Dawkins*, 183 Kan. 323, 328 P. 2d 346, a divorce action. In 1957, prior to the judgment in that action, the Reverend Dawkins and LaVerne Dawkins, his wife, conveyed this property to "Reynolds Dawkins, Carl Hendon and Andy J. Polteria as Trustees for the Body of Christ (Gospel Tabernacle), 934 Scott, Kansas City, Kansas." We must determine if the trustees can legally convey title to the church property without any action or authorization by the congregation.

The trial court found from the evidence that the defendant corporation was formed in 1962 by the Reverend Dawkins and others as a financial arm of the plaintiff church and some ten or more others like it located in several states; that control of the property of this church was vested in the council of elders of Peace Publishers; and that according to the tenets of the church, religious and property matters of all kinds were to be determined by and governed by that body.

The trial court held that even though plaintiff trustees may represent a majority of the members of the congregation, they may not divert the title to the property from the defendant corporation; that they have abandoned their rights in the property by separating from the mother church and from the duly appointed present minister. The trial court acknowledged the transfer of property was irregular and not according to ordinary business transactions, but that the title should be quieted in the defendant corporation.

Court review of church affairs is limited. The law recognizes the distinction between the church as a religious group devoted to worship, preaching, missionary service, education and the promotion of social welfare, and the church as a business corporation owning real estate and making contracts. The two functions may be performed by the same individuals, but only when they act in different capacities. The former is a matter in which the state or the courts have no direct legal concern, while in the latter the activities of the church are subject to the same laws as those in secular affairs. This distinction was made in *Hughes v. Grossman*, 166 Kan. 325, 201 P. 2d 670:

> "We have expressly held that controversies over theological questions and matters ecclesiastical in character are to be determined by the authorities of the particular church involved according to its laws and usages and that ordinarily the civil courts are without jurisdiction to review or control the decisions of duly constituted church authorities (*King v. Smith*, 106 Kan. 624, 189 Pac. 147). On the other hand, we have repeatedly recognized and applied the rule that where such controversies involve civil or property rights the civil courts will take jurisdiction and decide the merits of the case for themselves (see decisions heretofore cited, also *United Brethern, etc., v. Mount Carmel Community Cemetery Ass'n*, 152 Kan. 243, 103 P. 2d 877; *Jackson v. Jones*, 130 Kan. 488, 287 Pac. 603)." (p. 330.)

The property and financial affairs of churches must be the concern of secular authority in order to assure regularity of business practices and assure the right of citizens to have their gifts used as

they direct. Government owes this assurance to citizens and this in no way hinders any citizen's religious freedom.

The law also recognizes that different religious societies exercise authority over their financial and property affairs in different ways. (*Watson v. Jones*, 80 U. S. 679, 20 L. Ed. 666.)

A careful reading of the articles of incorporation of defendant corporation fails to disclose any religious principle, dogma or tenet to support the argument that this corporation became the parent organization of plaintiff church with superior ecclesiastical and property control. Our knowledge of the religious beliefs of plaintiff church and defendant corporation must rely upon evidence of the teachings and preachings of the Reverend Dawkins. The Reverend Harry Richard Tate, president of Peace Publishers, and Madeline Thomas and Helen Sims, longtime members of the congregation, testified that the Reverend Dawkins espoused a doctrine known as "apostolic order" which is the antithesis of democratic control by the congregation. "Apostolic order," by their description, was accepted by the congregation and vested full authority in the minister, the Reverend Dawkins, as a spiritual descendent of the Apostles of Christ.

Apostolic succession, according to recognized ecclesiastical writings, means that the mission and sacred power to teach, rule and sanctify, which Christ conferred on His apostles, is considered perpetuated in the bishops of those churches having an episcopal hierarchy. The mere proclaiming by the Reverend Dawkins of himself as the religious superior of the congregation may suffice to establish that fact in spiritual matters of his church, but it does not effect legal superiority in secular matters. There must be clear and convincing evidence of congregational acknowledgment of and acquiescence in the concept of legal superiority and authority over church business and property matters.

The record discloses since the organization of the church in the early thirties the Reverend Dawkins had exercised complete control of the funds and properties of the church. The church had no elected trustees or other officials until 1952 when Carl Hendon, Dorsey Gray, and the Reverend Dawkins were elected trustees in order to comply with requirements of a government lending agency. Thereafter, numerous legal papers were executed by the trustees at the request of the Reverend Dawkins for and on behalf of the congregation without their knowledge or approval. The

record is clear that the Reverend Dawkins dominated the financial affairs of the church during his lifetime. Defendants argue from that fact the local congregation had accepted his preaching of "apostolic order" and authoritarian control over both spiritual and financial matters to the extent he could deed away the property of the church to defendant. We cannot accept this argument. In *Dawkins v. Dawkins,* supra, we located title to this unincorporated chuch society's property in the trustees despite evidence of total domination by the Reverend Dawkins over both the spiritual and financial affairs. The court held:

"The established fact that a minister of an unincorporated church acted as the sole trustee of the church in handling its property and affairs, and later, acted as the dominant member of the board of trustees of the church, did not support the legal conclusion that the minister held title to the church property for his personal benefit and to the exclusion of the rights of the members of the unincorporated church." (Syl.)

We find no evidence in the record of any relinquishment by plaintiffs of local congregational control over financial and property matters. The Reverend Dawkins, even though acting under spiritual authority of "apostolic order," was limited in property matters to his role as trustee. The trustees, including the Reverend Dawkins, should have acted as trustees and should have met the responsibilities of trustees of an unincorporated religious society. The trustees were bound to seek congregational authority or approval for a valid transfer of church property to defendant.

In *Glader v. Schwinge,* 336 Ill. 551, 168 N. E. 658 (1929), the court distinguished a deed to trustees for the benefit of a church society and a deed to trustees for the general body of any church denomination for the purpose of promoting a particular religious principle or doctrine of faith. The court said:

". . . Where a deed to trustees for the benefit of a church society contains no express declaration of trust for the general body of any church denomination or for the teaching or practice of any particular religious principles or doctrines of faith, the right to the possession, control and use of the property is solely in the members of the church society. . . ." (p. 557.)

Assuming the deed was made to trustees of the plaintiff church to promote and perpetuate the preaching and teachings of the Reverend Dawkins, absent a showing of congregational approval we would have difficulty concluding that an organization not in existence at the time of conveyance could later declare its superior ecclesiastical control over the property deeded in trust to the local congregation.

In *Fink v. Umscheid*, 40 Kan. 271, 19 Pac. 623, the plaintiffs, representing the Catholic Church and congregation of Rock Creek, filed an action to cancel the deed executed by the bishop of the denomination of which said church was a part. The record disclosed the land was purchased by the congregation through the priest, to be used and cultivated for that particular church. The bishop claimed that under the rules and regulations of the Catholic Church all property was held by the bishop for the benefit of the Catholic Church at large and that he had the right to sell and control the same at his pleasure. The court held said property was held in trust for the benefit of the Rock Creek church and stated:

"Plaintiffs in error still insist that under the usages and customs of the Catholic church, all property is conveyed to the bishop as the absolute property of the Catholic church . . . The bishop testified as to the general usage of the church, and the custom of bishops to hold all the property of the church, save and except where some church organization is incorporated; but he also said that he held this property by reason of the original understanding that it was conveyed to him to do with as he pleased, or to aid in the education of destitute young persons who were unable to procure an education, . . . that he respected the trust reposed in him, and to carry it out he sold the property. He recognized that he held the land as a trustee for a particular purpose, . . . by reason of the understanding or agreement at the time the land was conveyed; . . . this claim is not tenable . . . all goes to show that this land was to be held in trust by the bishop for this particular congregation at Rock Creek. This being so, the action of the bishop in selling and conveying the land was in violation of that trust; . . ." (p. 274.)

The position of the court taken in each of these cases is in accord with our conclusion in *Dawkins v. Dawkins,* supra. A deed executed in favor of a trustee or trustees of an unincorporated church society creates a fiduciary relationship between said trustees and the congregation of the church, and the trustees hold said property for the benefit of the congregation. Any conveyance made by said trustees in violation of the fiduciary relationship and contrary to the purposes for which the trust was created is void. The conclusion is in harmony with K. S. A. 58-2405, which provides:

"Every sale, conveyance or other act of a trustee in contravention of a trust shall be void."

The trustees hold title only; not the authority to transfer the property. Any conveyance of church property must be executed by the trustees, but must be accompanied or preceded by a showing of congregational authority to make such a conveyance. There was no

such showing of congregational approval in this case. The trustees violated their duty in attempting to transfer title; therefore, the transfer is void.

Reversed.