**CHURCH OF GOD IN CHRIST, INC., Plaintiff,**

v.

**Bruce STONE, Inez Stone, Marvetta Evans and John F. Thompson, Defendants,**

and

**The Tabernacle Church of God in Christ, Orin H. Boyd, Pastor, Intervenor.**

Civ. A. No. 76–77–C6.

United States District Court, D. Kansas.

July 8, 1976.

Brock, Williams & Boyd, Houston, Tex., and Robert S. Fuqua, Wichita, Kan., for plaintiff.

C. William Cather, Wichita, Kan., for defendants.

Gerald J. Goodwin of Brock, Williams & Boyd, Houston, Tex., for intervenor, The Tabernacle Church of God in Christ.

## MEMORANDUM AND ORDER

WESLEY E. BROWN, Chief Judge.

### FINDINGS OF FACT AND CONCLUSIONS OF LAW

This is an action instituted by the plaintiff on February 17, 1976, whereby it seeks: 1) a permanent injunction restraining the defendants and intervenor from pursuing certain activities which interfere with the operation of the Tabernacle Church of God in Christ, 1502 East 17th Street, Wichita, Kansas, and 2) for a declaratory judgment that certain instruments filed of public record by the defendants are void. Trial was to the Court, and plaintiff's motion for preliminary injunction has been granted under the provisions of Rule 65, F.R.Civ.P. The respective parties have been afforded an opportunity to submit to the Court proposed findings of fact and conclusions of law, and additional briefs have been filed.

The parties have stipulated that this Court has proper jurisdiction of the subject matter and the parties, that all necessary parties have been joined, and also that venue is properly laid in this District. The Court has examined the pleadings and papers filed herein, has considered the stipulations and the evidence adduced at trial, and reviewed the arguments of counsel. The matter now is ready for final disposition.

The plaintiff, Church of God in Christ, Inc., hereinafter referred to as the National Church, is a non-profit national religious denomination organized and incorporated under the laws of the State of Tennessee. The organization and conduct of the National Church is governed by its Constitution, which document also serves as its Charter or Articles of Incorporation in the State of Tennessee. The National Church is comprised of an affiliation of more than 10,000 local member churches across the country which adhere to common tenets and ecclesiastical principles set forth in the Official Manual of the National Church.

One of the affiliates of the National Church in the Wichita, Kansas area, was the intervenor herein, Tabernacle Church of God in Christ, Orin H. Boyd, Pastor, Inc., hereinafter referred to as the Boyd Church. In accordance with the instructions of the National Church, this body was incorporated in 1962 by its pastor, Orin H. Boyd, as a non-profit religious corporation under the laws of the State of Kansas, and a Board of Trustees was appointed by the congregation to take charge of the local government and the property dedicated to its religious purposes. The Boyd Church grew out of a body or congregation which as early as 1928 or 1929 had declared its allegiance to the doctrines and manner of government of the National Church. When incorporated, the Boyd Church reaffirmed this allegiance. The evidence shows that its predecessor sent delegates to the national and jurisdictional conventions of the National Church and transmitted funds for its support. One of the members of the Boyd Church, Callie Smith, had from time to time held offices in the national organization.

Persons associated with the Boyd Church and its predecessor organization are as follows: Orin H. Boyd was appointed pastor of the local congregation in 1961 by the Na-

tional Church acting through its agent, the overseer, now the jurisdictional bishop, of the Kansas Southwest Jurisdiction. Graze Kinard presently holds this office and as such has general supervisory powers over the local churches within the Jurisdiction, including the power to organize new affiliated bodies and power to appoint or remove the various pastors who preside over the respective local congregations. The defendants, Bruce Stone, Inez Stone, Marvetta Evans and John F. Thompson, all profess to be current members of the Boyd Church and at least at one time had paid allegiance to the ecclesiastical doctrines and authority of the National Church. Bruce Stone was first ordained a minister and elder by the National Church acting through its jurisdictional bishop, Graze Kinard, and Orin H. Boyd, Stone's pastor at the time. John F. Thompson was licensed as a minister of the National Church by Pastor Boyd in 1966.

The realty involved in this controversy is that occupied by the Tabernacle Church of God in Christ (Tabernacle Church), a church building, at 1502 East 17th Street, Wichita, Kansas. This property was conveyed to the Boyd Church in 1962 by a general warranty deed filed of record in September, 1964. Prior to that time it had been the property of Viola and Henry Pierce, whose relationship to the Boyd Church is unknown. The evidence is not clear, but it appears that the church building had been erected sometime prior to this conveyance. It is clear, however, that at least until October, 1972, the church building had been used continuously since its construction for the purposes of promoting the principles and practices of the National Church. The purchase of this property was funded by a large bond issuance approved by the congregation and secured by a purchase money mortgage. In October, 1963, the congregation of the Tabernacle Church further approved and executed a $25,000 bond issuance for payment of construction and improvement on the church property, such bond also being secured by a mortgage on the church property. Repayment of the debts so incurred, which for the most part remain outstanding, has been effected by weekly contribu-

tions from the congregation of the Tabernacle Church.

This controversy has its origins in occurrences which began in 1971 at the Tabernacle Church. The National Church, as provided in its Articles of Religion, ascribes to the doctrine of pneumatology. Pneumatology is a term used to designate belief in the Holy Ghost as the instrument of faith within the Trinity of God. One of the principles in this concept is a belief that certain persons may receive the gift of the Holy Ghost, the gift of speaking in Tongues (glossolalia), which thereby makes that person a more effective witness to the mysteries of faith. In 1971, Mertrice Boyd, wife of Pastor Boyd, apparently acquired the gift of speaking in Tongues and, on the premise that she was speaking the will of God, directed the members of the congregation to do her bidding. Another basic tenet of the National Church, however, is that women cannot serve as elders, bishops or pastors in the church hierarchy. Many members of the Tabernacle Church felt that Mrs. Boyd, through her claimed capacity to speak in Tongues, was in effect directing the services at the church in the place of Pastor Boyd. Many who dissented were ejected from the church premises by Pastor Boyd. Many others merely stopped attending services altogether in the belief that Pastor and Mrs. Boyd had departed substantially from the original doctrines of the National Church. General attendance declined dramatically.

In October, 1972, Orin H. Boyd, in the presence of Bruce Stone, announced to Bishop Kinard that the Tabernacle Church was severing its relationship with the National Church. This was wholly a unilateral action and one not specifically approved by the local congregation nor generally announced to the local membership. However, several members, including the defendants herein, decided to follow the leadership of Pastor Boyd and declare their independence of the National Church, although they still adhered to certain of its basic tenets.

Prior to the attempted severance, in April, 1972, the General Assembly of the National Church had approved amendments to its Constitution, including amendments to those provisions setting forth its governmental structure. The new Constitution was formally executed by the national officers in September, 1972. Prior to execution, the Constitution had provided that no local church or affiliate could disassociate itself from the National Church except by provision of the General Assembly or when disorganized by the overseer, now jurisdictional bishop, of the region in which the affiliate was located. Under the 1972 revision, only the General Assembly can permit withdrawal of a local affiliate. However, the new provisions also state that no local church has "full status" in the national organization unless and until the presiding jurisdictional bishop has applied for and received from the General Secretary a certificate of membership in the National Church. No such certificate has ever been sought by the Boyd Church or by Bishop Kinard acting in its behalf.

Pastor Orin H. Boyd left the Tabernacle Church in December, 1974, for an unknown destination, and has not been heard from since. The defendants, who still recognize him as their pastor, claim that Pastor Boyd is conducting a holy mission of an unspecified nature and duration. Bishop Kinard became aware of Pastor Boyd's absence in March, 1975, and decided to investigate. He found the premises of the Tabernacle Church to be in general disrepair and the grounds unkept. When Bishop Kinard attempted to attend services at the Tabernacle Church the individual defendants requested that he leave and not return. The Bishop further determined that various bondholders were considering foreclosure of the property because of delinquent coupon payments. Under these circumstances, Bishop Kinard, acting in his capacity as jurisdictional bishop of the National Church, declared the pulpit of the Tabernacle Church vacant and stepped in to conduct the church services. He announced from the pulpit at a regularly scheduled service that an election to determine the Trustees of the Boyd Church would be held on the premises on April 7, 1975. On that date, however, Bishop Kinard and his followers could not obtain entrance to the church building. The election therefore was held at Holy Temple Church of God in Christ in Wichita. Eight persons were elected to the new Board, chaired by Lonnie Fleming, all of whom had been active participants in the affairs of the Boyd Church at least through November, 1970. Three of those elected had served on the Board of Trustees of the Boyd Church as early as 1964. This new Board immediately went about paying the bills and conducting the affairs of the Boyd Church.

From the time Bishop Kinard assumed control of the Tabernacle Church in April, 1975, and continuing to the date of the hearing in this matter, the defendants have engaged in activities which substantially disrupt the services conducted on the church premises by the Bishop and his representatives. Certain of the defendants, particularly Marvetta Evans, claim the gift of the Holy Ghost to speak in Tongues and have attempted thereby to control the services of the Tabernacle Church and to convert others to their beliefs. At times, simultaneous services are being conducted at the church by Bishop Kinard and the defendants. Altercations also have arisen from the rift between the defendants and the National Church. Actual physical confrontation has taken place on occasion between the factions, each attempting to exert a claimed right of control over the premises and other church property.

In June, 1975, the Board of Trustees elected in April discovered that the Articles of Incorporation of the Boyd Church had been forfeited by the Secretary of State in July, 1974, for failure to file an annual report and pay fees for 1973 as required by law. Lonnie Fleming therefore filed for a certificate of reinstatement of the Boyd Church, which was granted. Thereafter, on June 20, 1975, Lonnie Fleming filed an amendment to the Articles of Incorporation which, *inter alia*, formally changed the name of the corporation to the Tabernacle

Church of God in Christ, Inc., and designated one of Bishop Kinard's followers resident agent.

The defendants, in an attempt to regain control over the church premises, elected their own Board of Trustees in the parking lot of the church on August 29, 1975. Those elected included defendants Bruce Stone and John F. Thompson. This Board, simultaneously with the Board under direction of Lonnie Fleming, began paying certain debts attributed to the Tabernacle Church. Upon discovering that the name of the corporation had been changed, Bruce Stone, as chairman of the Board elected in August, filed an amendment to the articles changing its name back to Tabernacle Church of God in Christ, Orin H. Boyd, Pastor, Inc., and renaming Pastor Boyd resident agent. He also added an amendment which prohibits any further amendments except those filed under his own name or those of Pastor Boyd or Glen Crenshaw, the secretary of the August, 1975, Board of Trustees. This is the present state of the public records respecting the religious corporation.

▇▇ The Court finds that it has jurisdiction of this action under 28 U.S.C. § 1332. Absent any objection or stipulation to the contrary, the Court assumes that the law of the State of Kansas applies in this case. Accordingly, we find that the legal issues involved herein are properly before the Court for disposition. Purely theological questions and matters ecclesiastical in character must be determined by the authorities of the particular church involved according to its laws and usages. Civil courts have no jurisdiction to review or control the decisions of duly constituted church authorities. See *Gospel Tabernacle Body of Christ Church v. Peace Publishers & Co.,* 211 Kan. 420, 506 P.2d 1135 (1973). When church-related controversies involve civil or property rights, however, the civil courts will take jurisdiction and decide the merits of the case in order to assure regularity of business practices and the right of private use and ownership of property. *Id.* In this case, two factions of a local religious

organization have attempted to exercise simultaneous and conflicting control over church property. At times this has resulted in altercation and confrontation. It also has caused double payment of certain public debts and inconsistent recordation in public files. Under these circumstances, the Court feels the issues to be determined here are distinct from any doctrinal schism that may exist between the parties and a request for relief from this Court is proper. To hold otherwise would be to require settlement of the controversy by the General Assembly of the National Church, a government not recognized by the defendants as having binding authority over them.

▇▇ The applicable civil law respecting religious societies governed by Trustees is fairly clear in this state and does not differ significantly from the law in jurisdictions across the country. When a local religious organization has acquired property through the contributions and sacrifices of many members, past and present, all of whom have adhered to certain doctrines regarded as fundamental to a particular national denomination, no faction may be permitted to divert the church property to another denomination or to the support of doctrines, usages, and practices basically opposed to those characteristic of the particular church. *Gospel Tabernacle Body of Christ Church v. Peace Publishers & Co., supra; Huber v. Thorn,* 189 Kan. 631, 371 P.2d 143 (1962); *Dawkins v. Dawkins,* 183 Kan. 323, 328 P.2d 346 (1958); *Whipple v. Fehsenfeld,* 173 Kan. 427, 249 P.2d 638 (1952), *cert. denied* 346 U.S. 813, 74 S.Ct. 23, 98 L.Ed. 341 (1953); *Hughes v. Grossman,* 166 Kan. 325, 201 P.2d 670 (1949); *United Brethren v. Mount Carmel Comm. Cemetery Ass'n,* 152 Kan. 243, 103 P.2d 877 (1940); *Jackson v. Jones,* 130 Kan. 488, 287 P. 603 (1930). When such a schism occurs, the fundamental inquiry is which of the rival factions is the true representative and successor of the religious society as it existed prior to the schism. *Whipple v. Fehsenfeld, supra; Hughes v. Grossman, supra.* We therefore must ascertain which of the two factions adheres to the governing body of the socie-

ty, and those who adhere to the acknowledged organization are entitled to the use of the property.

■ For half a century the Boyd Church and its predecessor neither claimed nor exercised an independent status from that of the National Church, but throughout that period and at least until October, 1972, conformed to the rules, practices and church discipline of the National Church as prescribed in its Official Manual. The jurisdictional bishop chosen by the National Church supervised the affairs of the local body and appointed its pastors, including Orin H. Boyd. The local body and later the Boyd Church made its reports to the National Church, made financial contributions and sent delegates to its national and jurisdictional conventions. Payment of certain purchase money mortgages has been effected by contributions from a local membership which affiliated itself exclusively with the National Church. By their repudiation of certain fundamental principles and rules of church government prescribed by the custom and practice of the National Church, including that respecting participation of women in church services, the defendants forfeited their right as individuals to possession and control of the church property. It follows that any rights they might have had to such control by virtue of having been elected Trustees were non-existent in August, 1975.

■ The Court makes this determination in recognition of the fact that an individual church or faction is of course free to secede from the denomination if it elects to do so. However, it cannot assume control over church property in this event when the effect of such action would be to devote the property to doctrines fundamentally different than those to which the property had been dedicated in trust prior to the schism.

■ There also has been some contention by the defendants that the Boyd Church was not a member of the National Church under its 1972 constitutional revisions because a certificate of membership had never been applied for or issued. It therefore lacked "full status" as an affiliated church. The logical interpretation of this provision is not that it was intended to abolish the affiliation of all past member churches and start a completely new membership list. Rather, the provision is a device by which the National Church is able to better control its membership. The evidence is uncontroverted that churches existing prior to the 1972 revision but which have not yet obtained or even sought a membership certificate shall retain their original "full status" relationship with the National Church. See *Church of God in Christ, Inc. v. Cawthon,* 366 F.Supp. 1066 (E.D.Tex.1973), *aff'd* 507 F.2d 599 (5th Cir. 1975).

IT IS THEREFORE ORDERED that the Clerk enter judgment as follows, in accordance with Rule 58, F.R.Civ.P.:

That the defendants herein, Bruce Stone, Inez Stone, Marvetta Evans, and John F. Thompson, their officers, agents, servants, employees and attorneys, and all those persons in active concert or participation with them are hereby permanently restrained and enjoined, as of April 28, 1976, from:

(1) disrupting the conduct of regularly scheduled religious services under the direction of the Church of God in Christ, Inc., or those acting in its behalf;

(2) soliciting members on the church premises at 1502 East 17th Street, Wichita, Kansas, to commit acts of disruption or to refrain from attending services scheduled by the Church of God in Christ, Inc., or those acting in its behalf;

(3) attempting to control or exercise any acts of control over the affairs or management of the Tabernacle Church of God in Christ, its premises or other property, or over the affairs of the corporate body which holds title to such property or premises;

(4) committing any acts of violence or making any threats of violence against the officers, agents, servants, employees, and attorneys or the Church of God in Christ, Inc., or members of the congregation of the Tabernacle Church of God in Christ.

IT IS FURTHER ADJUDGED that the Certificate of Correction to the Certificate

of Amendment to the Articles of Incorporation and the Certificate of Amendment to the Articles of Incorporation, both filed with the Secretary of State of the State of Kansas by Bruce Stone on September 19, 1975, with respect to Tabernacle Church of God in Christ, Inc., which change the name of the corporation to Tabernacle Church of God in Christ, Orin H. Boyd, Pastor, Inc., change its resident agent and impose certain restrictions on the filing of further amendments are void as having been submitted without lawful right or authority.