MR. JUSTICE HUNT,
dissenting:
I agree with the majority opinion that summary judgment cannot be upheld because of any absence of breach of the implied covenant of good faith and fair dealing.
*120 I dissent on the second issue and would hold that the application of the implied covenant of good faith and fair dealing to the facts of this case would not unconstitutionally inhibit the free exercise of religion nor violate the free exercise of religion clauses of the United States and Montana Constitutions. Summary judgment was not proper on these grounds and I would reverse and remand this case for trial on the merits.
Defendant contends Little Flower School played an important role in the religious mission of the Roman Catholic Church and that all aspects of their education are permeated with religious mission. The majority has stated that this case involves the process of discipline and instruction itself within a religious school setting.
I have no quarrel with these statements as far as they go but they do not fully address the facts and issue before this Court. Plaintiff herself acknowledges that she was told she was dismissed because of problems with discipline in her classroom. She does not question that improper discipline can be used as a reason to terminate an employee under the terms of the school’s contract.
Rather her claim addresses whether she had notice of the shortcomings that displeased her employer so she could correct them and whether the discipline used by her met the disciplinary standards set out by her employer, Little Flower School. Nowhere does plaintiff challenge the validity of that disciplinary standard.
The First Amendment protects against government establishment of religion and prohibition of the free exercise thereof. Art. II, Section 5 of the Montana Constitution provides these same protections.
I find Cantwell v. State of Connecticut (1940), 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 instructive for direction on the issue of free exercise of religion. In its discussion on the First Amendment, the U.S. Supreme Court found that:
“. . . the Amendment embraces two concepts, — freedom to believe and freedom to act. The first is absolute but, in the nature of things the second cannot be. Conduct remains subject to regulation for the protection of society . . . .”
Id. at 303-304, 60 S.Ct. at 903, 84 L.Ed. at 1218.
“. . . Nothing we have said is intended even remotely to imply that, under the cloak of religion, persons may, with impunity, commit frauds upon the public . . .
“Even the exercise of religion may be at some slight inconvenience in order that the State may protect its citizens from injury.” Id. at 306. 60 S.Ct. at 904. 84 L.Ed. at 1219.
*121 The case before us involves a private citizen seeking to enforce a common law tort through the courts of this state against her employer, a church-operated school. The cases relied on by the majority regarding excessive entanglement between church and state are not fully applicable here. Rather, a wealth of case law indicates that although federal and state courts have no jurisdiction over solely internal ecclesiastical affairs or the validity of religious beliefs, they may exercise jurisdiction over torts incurred by religious institutions and in church controversy which impinges on property or civil rights. Lund v. Caple (1984), 100 Wash.2d 739, 675 P.2d 226; Turner v. Unification Church (D.R.I. 1978), 473 F.Supp. 367 aff’d (1979) 602 F.2d 458; Saul v. Roman Catholic Church of Arch. of Sante Fe (1965), 75 N.M. 160, 402 P.2d 48. Federal courts have directly addressed the issue of whether the free exercise clause immunizes defendant churches from tort claims.
In Turner, the court stated that:
“. . . . the ‘operational activities’ of a religion, those activities that are not solely in the ideological or intellectual realm, are subject to judicial review and may be regulated to achieve a sufficiently important state objective.”
Id. at 371-372.
In a similar case Van Schaick v. Church of Scientology of Cal., Inc. (D. Mass. 1982), 535 F.Supp. 1125, the court observed that:
“Whether or not such immunity exists depends, in part, on whether the adjudication of the claim would require a judicial determination of the validity of a religious belief . . .”
“Causes of action based upon some proscribed conduct may, thus, withstand a motion to dismiss even if the alleged wrongdoer acts upon a religious belief or is organized for a religious purpose. (Emphasis added.)”
Id. at 1135.
In the present case the application of the tort of good faith and fair dealing to the church-operated school does not require a determination of the validity of a religious belief. A clergy administrator’s religious role, in itself, does not bar application of the tort of good faith or any other common law tort. Religious leaders and organizations are responsible for breach of duty under common law. This Court has jurisdiction to apply the common law to this situation because such a review of a dismissal for the failure to use proper discipline in a classroom, whether a public or religious classroom, does not involve a judicial determination of the validity of a religious belief.
*122 Further, a series of case law decisions have indicated that neutral application of common law has been constitutionally applied to some circumscribed situations involving internal church disputes. For example, in Konkel v. Metropolitan Baptist Church, Inc. (App.1977), 117 Ariz. 271, 572 P.2d 99, the court found that where the issue is whether the expelling organization had acted in accordance with its own regulations the court had jurisdiction to determine whether the expulsion was proper. Id. at 100. Other jurisdictions follow a similar view. Ogden Street Church, Etc. v. Gospel Temple Church, Etc. (Colo.App.1974), 522 P.2d 757; Gospel Tab Body of Christ Church v. Peace Pub. & Co. (1973), 211 Kan. 420, 506 P. 2d 1135; Mount Zion Baptist Church v. Second Baptist Church (1967), 83 Nev. 367, 432 P.2d 328; Wolozyn v. Begarek (Okla.1963), 378 P.2d 1007.
The Supreme Court in Jones v. Wolf (1979), 443 U.S. 595, 99 S.Ct. 3020, 61 L.Ed.2d 755 stated:
“The neutral-principles approach cannot be said to ‘inhibit’ the free exercise of religion, any more than do other neutral provisions of state law governing the manner in which churches own property, hire employees, or purchase goods.”
Id. at 606, 99 S.Ct. at 3027, 61 L.Ed.2d at 786.
Thus since courts have been found to have jurisdiction to settle certain internal church disputes, I believe there is abundant authority for this Court to allow application of neutral tort law to respondent’s external dispute.
The majority opinion also relies on Wisconsin v. Yoder (1972), 406 U.S. 205, 92 S.Ct. 1526, 32 L.Ed.2d 15 for the authority that only values of the “highest nature” can be grounds for inhibiting First Amendment rights.
They do not appear to consider the fact that the Yoder court found that only certain claims would invoke the protection of the First Amendment. The Supreme Court held that:
“. . . to have the protection of the Religion Clauses, the claims must be rooted in religious belief. Although a determination of what is a ‘religious’ belief or practice entitled to constitutional protection may present a most delicate question, the very concept of ordered liberty precludes allowing every person to make his own standards on matters of conduct in which society as a whole has important interests.” (Emphasis added.)
Id. at 215-216, 92 S.Ct. at 1533, 32 L.Ed.2d at 25.
While maintenance of discipline is important to any school, *123 whether public or private, I would argue that it is not the correct factor in the equation to apply to the above standard.
More accurately this Court should ask whether plaintiff’s claim that she was terminated unfairly or in bad faith is a claim that impinges on the defendant’s religious belief. I would argue that application of the tort of bad faith in these circumstances does not do so.
Employers owe a duty to deal fairly and in good faith in employment relationships. This Court has found that a breach of this duty is a tort. Gates v. Life of Montana Ins. Co. (Mont. 1983), [205 Mont. 304,] 668 P.2d 213, 40 St.Rep. 1287.
Employees have an investment in their employment which is protected. Their very livelihood is dependent on their employment. Loss of employment often jeopardizes the family home and structure. The State of Montana has a compelling interest in maintaining that structure and stability for the citizens of this state. The duty of an employer to treat an employee fairly and terminate employment in good faith was recognized because it struck an important balance between the inherent inequality of bargaining power present in many employment relationships. Dare v. Montana Petroleum Marketing Co. (Mont.1984), [212 Mont. 274,] 687 P.2d 1015, 41 St.Rep. 1735.
The State of Montana has an important state objective in applying the obligation of good faith to employment relationships including lay teachers at church-operated schools. This common law tort as applied to Little Flower School is not a violation of the First Amendment and I would reverse the grant of summary judgment and allow plaintiff to bring her action to a jury for trial on the merits of her case.