(992 P.2d 812)

No. 80,679

CHURCH OF GOD IN CHRIST, NEW JERUSALEM CHURCH OF GOD IN CHRIST, and KANSAS SOUTHWEST CHURCH OF GOD IN CHRIST, *Appellees,*

v.

BOARD OF TRUSTEES OF NEW JERUSALEM CHURCH OF GOD IN CHRIST; ESSIE WITHERSPOON, NAPOLEON DEVORCE, JAMES WITHERSPOON, HOSEA COHENS, AND ULYSSES WASHINGTON, *Appellants.*

Opinion filed November 5, 1999.

*Marc A. Powell* and *Loren H. Houk*, of Powell & Brewer, L.L.P., of Wichita, for the appellants.

*Richard R. Yoxall*, of Yoxall, Antrim, Yoxall & Ambrosier, of Liberal, for the appellee.

Before PIERRON, P.J., KNUDSON, J., and WAHL, S.J.

PIERRON, J.: This case involves a dispute between members of the New Jerusalem Church of God in Christ (New Jerusalem Church) located in Liberal, Kansas, and the national Church of God in Christ (National Church) located in Memphis, Tennessee. The argument concerns who owns and controls a certain church building located in Liberal.

From its inception in 1979, the New Jerusalem Church (previously the Holy Sanctuary Church of God in Christ) was affiliated with the National Church. In connection with that affiliation it was also a member of the Kansas Southwest Jurisdiction Church of God in Christ and the Church of God in Christ, Inc., state and national organizations, respectively.

Pastor Allen Johnson was the founding pastor of the Holy Sanctuary Church of God in Christ. A service was held for the acceptance of the Holy Sanctuary Church into the Kansas Southwest Jurisdiction. It was attended by the members of the congregation and officials of the National Church. The name of the church was later changed to New Jerusalem Church of God in Christ.

The appellants and founding members claim indifference to the entire foundation process and deny that they specifically wanted their group to become a Church of God in Christ. They contend they simply wanted to establish a permanent church for their musical ministry in Liberal. Pastor Johnson testified that no objections were raised by the members of the church to becoming a Church of God in Christ, and some of the members told him they always

wanted to be members of the Church of God in Christ organization.

In 1980, Pastor Johnson and members of the church negotiated an agreement with the First Baptist Church for the installment contract purchase of a building in Liberal. The Board of Trustees of the First Baptist Church entered into a contract of sale with the Board of Trustees of the Holy Sanctuary Church of God in Christ: Calvin Baker, James Witherspoon, Nate Witherspoon, Earnest Powell, Bernard Witherspoon, and Carl Cunningham.

By mid 1985, the purchasers were in default for nonpayment of the installments. Calvin Baker testified the First Baptist Church was threatening foreclosure and he felt called by God to do something to save the church building. Not content with a passive stance, Baker obtained a loan from Citizen's State Bank in Liberal to buy the building. The Board of Trustees of the Holy Sanctuary Church quitclaimed the property back to the First Baptist Church. The First Baptist Church then sold the property to Baker.

Baker testified that he was contacted by the National Church as to his intentions after satisfaction of the mortgage. Baker said he would deed the property back to the membership of the Holy Sanctuary Church and signed a notarized statement to that effect. By 1993, the mortgage had been paid by church offerings and Baker's personal funds. Making good on his promise, on August 10, 1993, Baker deeded the property to the New Jerusalem Church of God in Christ.

In February 1994, Raymond Dunn was appointed pastor of the New Jerusalem Church. Over the next year, a disagreement developed between Dunn and members of the church. Jurisdictional Bishop J.C. Gilkie testified the members were dissatisfied with Dunn because they felt he was not a very aggressive pastor and not a proper leader for the church. By late 1995, the disagreement escalated to the point where the New Jerusalem Church asked Dunn to step down as pastor. He refused. The New Jerusalem Church submitted a written request to Bishop Gilkie asking for Dunn's removal. The Bishop refused.

Certain members of the New Jerusalem Church then changed the locks to the church building for the purpose of denying Dunn

access and entry. On the advice of Bishop Gilkie, Dunn removed the locks. Dunn testified the locks were subsequently changed three times. In the meantime, a deed dated January 25, 1996, was executed by the "New Jerusalem Church of God in Christ by Board of Trustees, James Witherspoon, Napolean Devorce, Hosea Cohens, Ulysses Washington, [and] Essie Witherspoon" to the "Board of Trustees of New Jerusalem Church." The deed was recorded with the Seward County Register of Deeds.

At this point, Bishop Gilkie intervened, and together with Pastor Dunn, applied for a restraining order and temporary and permanent injunctions. They asked that the deed of January 25, 1996, be set aside and that title to the real estate in question be quieted in the New Jerusalem Church of God in Christ and held in trust for the use and benefit of the members of the National Church.

After a 2-day trial and submission of written arguments, the trial court granted the National Church's petition. The court found the New Jerusalem Church was clearly a member of the National Church, and the January 25, 1996, conveyance was void. Title to the property was quieted in the New Jerusalem Church, to be held in trust for the use and benefit of the members of the Church of God in Christ, with national headquarters in Memphis, Tennessee. The New Jerusalem Church appeals.

Where the trial court has made findings of fact and conclusions of law, the appellate court's review is to determine whether the findings are supported by substantial competent evidence and whether the findings are sufficient to support the trial court's conclusions of law. *Tucker v. Hugoton Energy Corp.*, 253 Kan. 373, 377, 855 P. 2d 929 (1993).

The jurisdiction of the courts to address matters involving church affairs is limited. Purely theological questions and matters ecclesiastical in character must be determined by the authorities of the particular church involved according to its laws and usage. Civil courts have no jurisdiction to review or control the decisions of duly constituted church authorities. However, when church-related controversies involve civil or property rights, the civil courts will take jurisdiction and decide the merits of the case in order to assure regularity of business practices and the right of private use

and ownership of property. See *Gospel Tabernacle Body of Christ Church v. Peace Publishers & Co.*, 211 Kan. 420, 422, 506 P.2d 1135, *reh. denied* 211 Kan. 927, 508 P.2d 849 (1973) (court considered whether a board of trustees had authority to convey church property absent approval of members of the congregation).

The applicable civil law respecting religious societies governed by trustees is clear in this state and does not differ significantly from the law in jurisdictions across the country. When a local religious organization has acquired property through the contributions and sacrifices of many members, past and present, all of whom have adhered to certain doctrines regarded as fundamental to a particular national denomination, no faction may be permitted to divert the church property to another denomination or to the support of doctrines, usages, and practices basically opposed to those characteristic of the particular denomination. See *Gospel Tabernacle*, 211 Kan. 420; *Huber v. Thorn*, 189 Kan. 631, 371 P.2d 143, *reh. denied* 190 Kan. 125, 372 P.2d 579 (1962); *Dawkins v. Dawkins*, 183 Kan. 323, 328 P.2d 346 (1958); *Whipple v. Fehsenfeld*, 173 Kan. 427, 249 P.2d 638 (1952), *cert. denied* 346 U.S. 813 (1953); *Hughes v. Grossman*, 166 Kan. 325, 201 P.2d 670 (1949); *United Brethren, Etc., v. Mount Carmel Community Cemetery Ass'n*, 152 Kan. 243, 103 P.2d 877 (1940); *Jackson v. Jones*, 130 Kan. 488, 287 P. 603 (1930).

The New Jerusalem Church has not appealed the trial court's decision to void the deed of January 25, 1995. In its reply brief, the New Jerusalem Church candidly states: "To focus the issue on . . . appeal, defendants admit that the trial court's action with respect to the January 25, 1996 deed was correct. Defendants do not admit that the trial court's reasoning was correct, as a matter of law, in making that decision, but it was nonetheless the correct decision." In essence, the New Jerusalem Church admitted it did not have the authority to deed the property away from the National Church.

The New Jerusalem Church states the issue for this court's resolution is who is the beneficiary of Calvin Baker's August 10, 1993, deed to New Jerusalem Church. The board of trustees is clearly the trustee of the property, but the question is whether the prop-

erty is held in trust for the local church or the National Church. See K.S.A. 17-1726; Kansas Title Standards Handbook, Religious Bodies, 6.4 (6th ed. 1995).

The Church of God in Christ, Inc., is a 91-year-old ecclesiastical organization. Numerous local churches are a part of its hierarchial system. See *Serbian Orthodox Diocese v. Milivojevich*, 426 U.S. 696, 49 L. Ed. 2d 151, 96 S. Ct. 2372, *reh. denied* 429 U.S. 873 (1976) (Supreme Court recognized that the Orthodox church was a "hierarchical church," with a governing body, set rules of procedure, and an internal appeals procedure). The Church of God in Christ is typically organized with various bishops and district superintendents. See *Church of God v. Middle City Ch. of God*, 774 S.W.2d 950, 951 (Tenn. App. 1989).

The National Church has duly adopted a constitution and bylaws which apply to its local churches. Jurisdictional Bishops are responsible for ensuring local compliance with the National Church's doctrinal and other policies and are empowered to appoint and remove pastors for the local churches within their jurisdiction. See *Church of God in Christ, Inc. v. Graham*, 54 F.3d 522, 524 (8th Cir. 1995). Part I, the Constitution, Article III, Part 2, Section D, ¶¶ 5, 9, and 11 of the Official Manual of Church of God in Christ provides as follows:

"5. A local church, which has been accepted by the Church of God in Christ and issued a Certificate of Membership, shall not have the legal right or privilege to withdraw or sever its relations with the General Church, except by and with the permission of the General Assembly."

"9. Real Estate or other property may be acquired by purchase, gift, devise, or otherwise, by local churches. Where real or personal property is acquired by deed, the instrument of conveyance shall contain the following clause, to wit:

'The said property is held in trust for the use and benefit of the members of the Church of God in Christ with National Headquarters in the City of Memphis, Shelby County, Tennessee, and subject to the Charter, Constitution, Laws and Doctrines of said Church, now in full force and effect, or as they may be hereafter amended, changed or modified by the General Assembly of said Church.'"

"11. No deed, conveyance or mortgage or [sic] real estate of a local church shall be binding on the Church of God in Christ unless the execution of said

instrument has been approved in writing by the Jurisdictional Bishop having jurisdiction over said local church."

This case is not a typical "schism case" where two factions argue over church doctrine or a fundamental change practiced or advocated by a faction in the manner or conduct of worship services, teaching, or other matter of church function. See *Gospel Tabernacle*, 211 Kan. at 422-24. Rather, it began as a dispute over the competence of the pastor. The New Jerusalem Church argues it neither attempted to exclude any "member" of the church from the church building nor renounced the National Church, only that it wanted a new pastor. The New Jerusalem Church contends that the members "only disavowed their willingness to permit [the National Church] to take control of real property which, they, as the local congregation, had acquired, paid for, and maintained for their purposes of providing a place for musical ministry."

The evidence clearly supports the finding that after the Jurisdictional Bishop did not provide the members of the New Jerusalem Church with a resolution of their problems with Pastor Dunn satisfactory to them, they changed the locks to prevent him from entering the premises. When that failed to deter Pastor Dunn, the members then executed the deed conveying the property to an organization which did not specifically denote a connection with the National Church. Pastor Dunn testified that after the 1996 deed was executed, James Witherspoon showed him the deed and said the New Jerusalem Church was no longer a part of the National Church. This case therefore does not involve a schism over doctrinal beliefs, but a disagreement over ownership and control of church property.

The New Jerusalem Church does not, for the most part, deny its affiliation with the National Church. In any event, there is substantial competent evidence to support the trial court's ruling that the New Jerusalem Church is a member of the Kansas Southwest Jurisdiction and the National Church organizations. Since 1979, no one has questioned the membership of Holy Sanctuary Church of God in Christ, now the New Jerusalem Church, in the National Church.

The New Jerusalem Church maintained a longstanding, formal affiliation with the National Church. There was continual, substantial participation of the New Jerusalem Church and its members in the national, state, and district meetings, activities, and functions. Pastors of the New Jerusalem Church were appointed by the Jurisdictional Bishop of the Kansas Southwest Jurisdiction and given a certificate of appointment as pastor of the local church. The New Jerusalem Church made state and national "reports," which were financial contributions to help carry on the business of the National Church. The National Church issued a certificate of membership to the local church.

The New Jerusalem Church argues that while it certainly participated in the National Church, there is no evidence the congregation ever gave up its secular authority over the local church. It argues the trial court incorrectly found that since it had submitted to the discipline of the National Church that a deed to the trustees of the New Jerusalem Church was the equivalent of a deed to the trustees for the benefit of the National Church. The New Jerusalem Church also argues the court erred in finding that Baker's intention to deed in trust for the National Church was clear upon the face of the deed.

The New Jerusalem Church cites the early case of *Fink v. Umscheid*, 40 Kan. 271, 19 Pac. 623 (1888), in which the plaintiffs, representing the Catholic Church and congregation of Rock Creek, filed an action to cancel the deed executed by the bishop of the denomination of which said church was a part. The record disclosed the land was purchased by the congregation through the priest, to be used and cultivated for that particular church. The bishop claimed that under the rules and regulations of the Catholic Church, all property was held by the bishop for the benefit of the Catholic Church at large and that he had the right to sell and control the same at his pleasure. The court ruled the property was held in trust for the benefit of the Rock Creek church and the action of the bishop in selling and conveying the land was in violation of that trust. 40 Kan. at 274.

Based on *Fink*, the New Jerusalem Church argues Kansas law permits unincorporated religious societies to purchase real estate,

pay for it, and improve it; that the real estate thus purchased is held by the trustees for the benefit of the members of the society; and that the land cannot be conveyed away from them by higher church officials without the approval of the membership.

We see a distinction. In *Fink*, the land was being conveyed away from church ownership. That is the opposite of what is proposed here.

In *Glader v. Schwinge*, 336 Ill. 551, 168 N.E. 658 (1929), the court distinguished a deed to trustees for the benefit of a church society from a deed to trustees for the general body of any church denomination for the purpose of promoting a particular religious principle or doctrine of faith. The court stated:

"Where a deed to trustees for the benefit of a church society contains no express declaration of trust for the general body of any church denomination, or for the teaching or practice of any particular religious principles or doctrines of faith, the right to the possession, control and use of the property is solely in the members of the church society." 336 Ill. at 557.

66 Am. Jur. 2d, Religious Societies § 51, pp. 804-05 provides:

"Where property is acquired by a religious society and the conveyance under which the title passes imposes no limitation upon the uses to which the property is to be devoted, so long as any existing organization can be ascertained to be that to which the property was granted, or its regular and legitimate successor, it is entitled to the use of the property."

Again, we see distinctions in the present case that require clarification of this general language. In *Church of God in Christ v. Cawthon*, 507 F.2d 599, 602 (5th Cir. 1975), the court found that a local Church of God in Christ was a member of and subservient to the National Church. The court also decided the lower court was correct in enjoining a dissident faction from attempting to exercise acts of possessory control over the local church property and from interfering with the local church property and with the conduct of services therein by the local faction loyal to the National Church. The court held the deed to the newly created corporation was void.

Pursuant to *Cawthon*, the National Church argues that the members of the New Jerusalem Church, which is a member of the National Church and its hierarchical church structure, do not have

the power and authority to possess and control church property or to execute a deed or conveyance of the church property without the consent of the Jurisdictional Bishop.

In *Church of God in Christ, Inc. v. Stone*, 452 F. Supp. 612 (D. Kan. 1976), the court held that an individual church or faction is free to secede from the National Church if it elects to do so. However, the seceding faction "cannot assume control over church property in this event when the effect of such action would be to devote the property to doctrines fundamentally different than those to which the property had been dedicated in trust prior to the schism." 452 F. Supp. at 617.

In reply, the New Jerusalem Church cites *Church of God in Christ, Inc. v. Graham*, 54 F.3d 522 (8th Cir. 1995), involving a Church of God in Christ Church in Kansas City, Missouri. In *Graham*, the local church was ministered by the same pastor from the church's inception in the 1960's until his death in 1991. The pastor incorporated the local church and he *never* acknowledged it was subject to any regulatory oversight by the National Church. The articles of incorporation specifically declared the local church's independence by stating "it is expressly understood that this corporation is not bound by or subject to oversight by any other ecclesiastical body," and the local church's bylaws stated "the corporation is not under the authority or jurisdiction of any bishop or any other person affiliated with the Church of God in Christ." 54 F.3d at 524-25.

After a controversy with the replacement pastor, the National Church sought injunctive relief requiring the replacement pastor to vacate the pulpit, a declaration of the National Church's interest in the local church property, and a reformation of the local church's documents to properly reflect the required trust in favor of the National Church. The *Graham* court concluded the local church was independent from the National Church and that it should retain its property free of any claims of the National Church. 54 F.3d at 526-27. However, we note in the instant case that the local church had never disassociated itself from the National Church as had the local church in *Graham*.

Neither of the parties cite *Church of God v. Middle City Ch. of God,* 774 S.W.2d 950 (Tenn. App. 1989). There, the National Church sued a local church to set aside conveyances of real property and sought a technical adjudication of title to property to allow the transfer of the property to reflect the trust for the National Church. There was apparent friction between the National Church and the local church, but there was no evidence the local church had withdrawn from the national organization. The local church incorporated itself and then attempted to deed the property to the corporation without the trust language required by the National Church constitution.

Of import in the present case are several of the *Middle City Ch. of God* court's conclusions of law as to the trust question:

" 'Our cases have consistently held that property conveyed to a local church which is a part of a connectional church does not remain the property of the local church even when there is no trust language in the deed. See *Cumberland Presbyterian Church v. North Red Bank Cumberland Presbyterian Church,* 430 S.W.2d 879 (Tenn. App. 1968); *Hardin v. Starnes,* 32 Tenn. App. 66, 221 S.W.2d 824 (1949). Therefore, when a local church acquires real property by deed, it is held in trust for the parent church even in the absence of express trust language. . . . See *Fairmount Presbyterian Church, Inc. v. The Presbytery of Holston of the Presbyterian Church of the United States,* 531 S.W.2d 301 (Tenn. App. 1975).

" 'According to these cases the law would appear to be established in Tennessee. A local church that is a part of a connectional church holds property in trust for the benefit of the superior organization.' " 774 S.W.2d at 952.

The New Jerusalem Church asserts its relationship with the National Church was insufficient to support an implied trust. An implied trust is created by implication of law based upon the presumed intention of the parties or based upon equitable principles independent of the particular intention of the parties. See *Allbert v. Allbert,* 148 Kan. 527, 530-31, 83 P.2d 795 (1938). The United States Supreme Court indicated in *Watson v. Jones,* 80 U.S. 679, 20 L. Ed. 666, 13 Wall. 679 (1871), that property held by a local congregation may be held by implied trust for a general church depending upon the relationship found in fact to exist between the local and general churches.

As discussed previously, the New Jerusalem Church had a continual, longstanding, and formal affiliation with the National Church. This relationship is sufficient to support an implied trust in favor of the National Church. See *United Meth. Ch. et al. v. St. Louis, etc. Meth. Ch.*, 150 Ind. App. 574, 585, 589, 276 N.E.2d 916 (1971) (overwhelming evidence established an implied trust in favor of parent church was intended by local church and in fact established, and property was held in trust for use of general church). Consequently, we find the factors that contributed to the *Graham* court's finding of independence by the local church are clearly not evident in the present case.

We also note that in a hierarchial church structure, courts have rejected the argument that a local church always has the right to control its own property if neither the general church nor the district church contributed to the acquisition of local church property. See *Pilgrim H. Church v. First Pilgrim H. Church*, 115 Ill. App. 2d 448, 456, 252 N.E.2d 1 (1969); *Smart v. Wesleyan Meth. Church*, 257 Ind. 17, 21-22, 271 N.E.2d 713 (1971).

We agree the evidence as found by the trial court shows an affiliation between the New Jerusalem Church and the National Church in the format of a hierarchical organization; that Baker had legal and equitable title to the property in question when he conveyed it to the New Jerusalem Church; and that upon said conveyance, the property then became subject to the policies and procedures of the National Church, including the trust implications and the requirement that any conveyance of the property be approved in writing by the Jurisdictional Bishop.

A local church, if it desires to remain independent of the influence of a parent church body, must maintain this independence in the important aspects of its operation, *e.g.*, polity, name, finances. It cannot, as here, enter a binding relationship with a parent church which has provisions of implied trust in its constitution, bylaws, rules, and other documents pertaining to the control of property, yet deny the existence of such relationship. A local church cannot prosper from and enjoy the benefits afforded by a parent hierarchial church, participate in the functioning of that body, and then disclaim affiliation when the parent church acts contrary to the

desires of the local church, so as to shield from equitable or contractual obligations the property acquired by the local church either before or during such affiliation.

Affirmed.