## JACOB FEIZEL v. THE TRUSTEES OF THE FIRST GERMAN SOCIETY OF THE M. E. CHURCH OF WYANDOTTE CITY.

1. RELIGIOUS LIBERTY; *Freedom of Conscience.* The courts will not interfere to compel an individual to attend worship at any place, to remain connected with any church organization, nor to receive any one as his pastor.

2. CHURCH PROPERTY; *Trusts; Mandamus.* Where property is conveyed to a church society, to be used in a certain manner, and subject to a certain trust, courts of equity will, on the application of any party interested, compel the execution of that trust, and restrain any diversion from such use.

### *Original Proceedings in Mandamus.*

JACOB FEIZEL filed in this court his duly verified petition for a writ of mandamus, alleging, among other things, "that the said plaintiff is a minister of the gospel, a preacher of the M. E. Church, duly licensed and ordained as a deacon and elder in said church by the proper church authority, according to the rules and discipline of said church, and a member of the Southwest German Conference of said church; that Jacob Munzenmeyer, Frederick Janson, Andrew Holzberlein, Matthias Ramman, and F. H. Weber constitute and are the board of trustees of the First German Society of the M. E. Church of Wyandotte City, (a corporation duly organized under the laws of the state of Kansas as a religious society;) that as such trustees they are seized in behalf of said corporation of the following lands and tenements situated in the county of Wyandotte, etc., (describing the land;) that said lot had been conveyed to them as such trustees in trust, for certain church purposes, and subject to certain terms

and conditions," (which purposes and conditions are stated in the opinion;) "that such trustees have in conformity to their trust built and erected on said described lands a church edifice as a house of worship for the preaching of the gospel in conformity to the rules and discipline of the said M. E. Church; that on the 9th of September 1871 said *Feizel* was duly appointed and designated by the bishop * * * who had the authority so to do, to supply the pulpit as pastor and do the pastoral and ministerial work, and to preach and expound God's Holy Word in the church aforesaid at the said Wyandotte Mission from and after said 9th of September 1871 for one year, and until the next annual conference met, and his successor was appointed and qualified; that in pursuance of the said appointment the said *Jacob Feizel* came to said city of Wyandotte for the purpose of entering upon the office and duties of his pastorate, as pastor and preacher aforesaid, and upon the 1st day of October 1871 attempted to enter upon the discharge of the office and duties thereof, but that said trustees refused to permit him to preach and expound God's Holy Word in the church aforesaid, refused him admittance into said church edifice of said society, locked, closed and barred the doors of said church-building against him, and still refuse to admit him to the office and duties of pastor and minister of said church and its society and to admit him into the church edifice aforesaid, or to permit him to preach and expound God's Holy Word therein," etc. An alternative writ of mandamus was allowed, commanding said trustees to admit the plaintiff to the duties and office of pastor of said church, or show cause, etc., on the 3d of January, 1872. The alternative writ was duly served. The trustees (defendants,) showed cause. Plaintiff moved for a peremptory writ. Testimony was taken on the part of the plaintiff, and also on the part of the defendants. No brief for defendants filed.

*Cobb & Alden*, for plaintiff:

1. Where there has been an appropriation of property for the support of a church, in which certain religious doctrines

38

should be taught, and a certain discipline observed, not contrary to law, and there has been an attempt to divert and withhold said property from the uses to which it was dedicated, by the persons in possession of such property, the courts will enforce the performance of the uses and trusts to which said property has been dedicated. 4 H. & McH., (Md.) 449; 2 Barb., 397. The intention expressed in the grant or conveyance is the criterion by which to determine the purposes to which the property of a church has been dedicated. Where the grant expresses that intention clearly and unequivocally, that must govern.

The great and paramount duty of trustees of religious corporations is to see that the temporalities committed to their charge are fairly and fully devoted to the purposes which the founders had in view. All authority conferred upon them is necessarily subordinate to this great end, and all exercise of it beyond the legitimate attainment of this is usurpation. It is no excuse for any aberration from the line of their duty for such officers to say that they have been directed to it, or are sustained in it, by a majority of those to whom they owe their appointment. 2 Barb., 397.

2. The writ of mandamus is the proper remedy to put a minister of any religious sect in possession of the pulpit to which he is entitled. 2 Barb., 397; 4 H. & McH., 449. This action is properly brought in the name of Jacob Feizel, as plaintiff, against the trustees, etc., he being the real party in interest therein. Code, § 26, Gen. Stat., 685. And the action is properly brought against the *trustees*, and not against the corporation in its corporate name — said trustees being ministerial officers of said corporation, upon whom the law enjoins special duties resulting from their office or trust, to compel the performance of which duties this action is brought. Code, § 688, Gen. Stat., 766; 2 Barb., 397; 12 Johns., 444. On a motion for a peremptory mandamus the question is tried, and the decision of the court is made, solely upon the return of the alternative writ. 7 Wend., 474.

3. The plaintiff is entitled to recover damages which he

has sustained by reason of the refusal of the trustees to admit him to his office and duties. Code, § 697.

The opinion of the court was delivered by

BREWER, J.: This is an original proceeding in this court. Plaintiff, who is a minister of the gospel, a preacher of the Methodist Episcopal Church, and who was properly appointed and designated by the regular church authorities to take charge as pastor of the First German Society of the Methodist Episcopal Church of Wyandotte City, for the year commencing September, 1871, applies to this court for a writ of mandamus to compel the defendants, who are the trustees of said society, to admit him to the duties and office of such pastor, and to occupy the church edifice of said society, and preach in its pulpit. There are two questions, one of fact, and the other of law. The question of fact is, whether the defendants have excluded the plaintiff from the pulpit, the church, and the pastorate. And the question of law is, whether and to what extent, if they have so excluded him, the courts will interfere.

In regard to the first question much testimony was offered on both sides. Without noticing it in detail, it is enough to say that it satisfies us that there was an exclusion of the plaintiff by the defendants. The testimony is not very strong, and does not point to any acts of personal violence. Nor do we think a forcible collision was necessary, before the plaintiff could bring his cause into court.

To what extent will the courts interfere? In order to fully answer this question it will be necessary to consider certain facts which anteceded in point of time this controversy between the parties. In August 1866 Mathias Splitlog conveyed a lot in Wyandotte City unto Jacob Munzenmeyer, and others, trustees of the First German Society of the Methodist Episcopal Church. The conveyance recites that it is in trust "that they shall erect and build, or cause to be erected and built, hereon, a house or place of worship for the use of the members of the Methodist Episcopal Church in

the United States of America, according to the rules and discipline which from time to time may be agreed upon and adopted by the ministers and preachers of the said church at their general conferences in the United States of America, and in further trust and confidence that they shall at all times forever after permit such ministers of the gospel and preachers belonging to the said church as shall from time to time be duly authorized by the general conference of the ministers and preachers of the said Methodist Episcopal Church, or by the annual conference authorized by the said general conference, to preach and expound God's Holy Word therein." Upon this lot the church edifice from which plaintiff was excluded, was built. We have copied this recital of the conveyance, in full, because, as it seems to us, it defines the boundaries of our right to interfere. By the conveyance of this lot, and the erection thereon of the church building, a trust was created which courts of equity will enforce. We cannot compel an individual to attend worship in any place, nor remain connected with any church, nor to receive any one as his pastor. These are matters which are relegated to the domain of the individual conscience, and over which neither legislature nor court can exercise any control. The religious freedom guaranteed by our constitution, means absolute personal independence therein. All the defendants can withdraw from the society of which they are now trustees, and connect themselves with other existing religious organizations, or form a new one, or remain disconnected from all; and no power is known to the law to restrain them. We do not of course mean to say that any existing society is under obligations to admit all who seek admission. One man's liberty is not another man's restraints. All being free, any existing society may admit or reject whom it pleases. Yet each one can leave when he pleases, and go wherever he may find reception. But with regard to the church lot, and edifice, the temporalities of the church, whenever they are held in trust, courts of equity will interfere and see that the trust is executed, and the property preserved in such manner as will

accomplish the purpose of the grantor of the trust.   Here the trust created is, that the trustees shall permit the duly authorized ministers of the M. E. Church to occupy the pulpit, and expound God's Holy Word therein.   The plaintiff is such authorized minister.   If they hinder him from preaching in this church, they are thwarting the expressed intention of the donor, and diverting the property from the channel of the trust in which he placed it.   At this point the courts will interfere, and restrain any diversion of the property from the trust. *The People v. Steele,* 2 Barb., 397.   The peremptory writ must therefore issue, commanding defendants to admit plaintiff to their church edifice, and to permit him to occupy and preach in its pulpit, and to refrain from all interference with him in the discharge of his duties therewith connected.

Plaintiff also asks that damages should be awarded him. As he has been all this time the legal pastor of this society, he can recover whatever salary may be due him in an ordinary action at law.   We do not think therefore any allowance should be made in this proceeding.   The judgment of the court carries with it against the defendants all costs.

All the Justices concurring.