### B. D. EASTMAN V. M. A. HOUSEHOLDER *et al.*

1. INSANE ASYLUM — *Wrongful Removal of Superintendent* — *Mandamus.*
   *Mandamus* is an appropriate remedy to restore to the possession of
   his office a superintendent of an insane asylum of the state, from
   which he has been arbitrarily and wrongfully removed without cause,
   before the expiration of his term of office, by the board of trustees
   of the state charitable institutions.

2. WRONGFUL REMOVAL, *When.* A superintendent of an insane asylum
   of the state, who is arbitrarily dismissed from office, without any
   sufficient cause and in violation of the statute, by the board of trus-
   tees having charge of such asylum, and is deprived by them of his
   office room, fixtures, books, papers, etc., which are turned over to
   another person acting in concert with them, so that he is thereby
   prevented from discharging his official duties, is wrongfully removed
   from office. It is not necessary that any forcible collision between
   him and the trustees, or the person acting with them, to prevent him
   from exercising the duties of his office shall occur over the office, or
   the possession of the office room, books, records, etc., before he can
   apply to the courts to be restored.

3. PETITION — *Sufficiency.* The allegations of the alternative writ of
   *mandamus* examined, and *held* not to show a voluntary abandon-
   ment of the office of superintendent of the insane asylum at Topeka
   by the plaintiff, nor such *laches* upon his part in applying for a writ
   of *mandamus* to be restored to his office, from which he alleges he
   has been arbitrarily and wrongfully removed, as to forbid the relief
   he prays for.

### *Original Proceeding in Mandamus.*

ON the 16th day of August, 1894, there was issued out of
this court an alternative writ of *mandamus*, at the instance of
the plaintiff and against the defendants, which stated, among
other things, that B. D. Eastman is a citizen of the United
States and of the state of Kansas, and a resident of said state
of Kansas; that defendants M. A. Householder, W. S. Wait,
N. M. Hinshaw, Mary E. Lease and Walter N. Allen are the
duly appointed, qualified and acting members of the board of
trustees of state charitable institutions of said state of Kansas;
that prior to the 1st day of March, 1894, said plaintiff herein
had been duly selected, appointed and elected superintendent

of the insane asylum located at Topeka, in Shawnee county, Kansas, for the term expiring June 30, 1895, by the duly appointed, qualified and acting board of trustees of state charitable institutions of said state of Kansas, the insane asylum being one of the charitable institutions of the state of Kansas; that in pursuance of said selection, appointment, and election, the plaintiff duly qualified, and was installed in and entered upon the performance of his duties as such superintendent of said insane asylum, and so remained and continued in such office in the performance of said duties until on or about the 1st day of March, 1894, when said plaintiff was wrongfully, illegally and unlawfully removed from said office through the erroneous and illegal conduct of the then board of trustees of state charitable institutions of the state of Kansas, by striking from the pay roll of the officers and employés of said asylum the name of plaintiff, and by delivering the office room, office fixtures, books, papers and records pertaining to said office to defendant J. H. McCasey, and informing said plaintiff that he was relieved from his official duties as said superintendent, and thereby dispossessing said plaintiff of said office and depriving him of the use, salary and emoluments of the same; that at said time there was no vacancy in said office, nor had any charges been presented or filed against said plaintiff for his removal from said office, as by law in such cases made and provided, nor had the official term for which said plaintiff had been selected, appointed and elected as said superintendent expired by operation of law or otherwise; that said plaintiff, on or about August 15, 1894, while said board of trustees of state charitable institutions was duly convened and in session for the transaction of business, made a demand upon said board to be restored to and reinstated in said office of superintendent of said asylum, which demand was by said board refused and denied, and said board still refuses to allow said plaintiff to perform his duties as said superintendent of said insane asylum, and still refuses to allow to him his salary and emoluments of said office.

The writ commanded the defendants M. A. Householder,

W. S. Wait, N. M. Hinshaw, Mary E. Lease, and Walter N. Allen, as the board of trustees of the state charitable institutions of the state of Kansas, to restore the plaintiff to his official position as superintendent of the insane asylum, and to install him in the office, and further, commanded the defendant J. H. McCasey to surrender to the plaintiff the office room of such superintendent, together with the office furniture, fixtures, papers, books and records belonging to or under the control of the superintendent of the insane asylum, or to show cause before this court why they have not done as so commanded. On September 6, 1894, the board of trustees of the state charitable institutions and J. H. McCasey separately filed motions to quash the alternative writ, for the following reasons:

"1. That from the face of said writ it appears that *mandamus* is not the proper remedy for the matters therein alleged, but that there is another plain, adequate and complete remedy therefor, to wit, the action of *quo warranto*.

"2. That from the unexplained *laches* of said plaintiff, appearing upon the face of said writ, it affirmatively appears that, if said plaintiff ever had any right to be restored to said office, he had fully abandoned said office before applying for said writ, and is forever barred from asserting such right.

"3. That upon the showing made on the application therefor, said writ was improvidently granted."

The demurrers were presented and argued at the September sitting of this court for 1894.

*W. A. S. Bird*, and *S. L. Seabrook*, for plaintiff.

*John T. Little*, attorney general, and *G. C. Clemens*, for respondents.

The opinion of the court was delivered by

HORTON, C. J.: This is an application to this court, in the exercise of its original jurisdiction, for *mandamus* to compel the defendants, as trustees of the state charitable institutions, having control of the insane asylum at Topeka, to restore B. D. Eastman to his official position as superintendent

of that asylum, and to permit him to exercise the duties of his office without any interruption or intrusion from the defendants or either of them.

It is contended by the defendants that the petitioner has mistaken his remedy, and that *mandamus* will not lie. It is said that his appropriate remedy, if he has any, is by *quo warranto*. The great weight of authority is, that the courts will refuse to lend their extraordinary aid by *mandamus* to compel the admission of a claimant to an office in the first instance where he has never been in the actual possession of the office or discharged its duties. Where, however, one has been in the actual and lawful possession and enjoyment of an office, from which he has been wrongfully removed, a different case is presented. Prior to the 3d of July, 1888, George T. Neally was the city engineer of the city of Topeka; D. C. Metsker was the mayor. On that date, Metsker, as mayor, attempted to suspend Neally from his office, and place therein William Tweeddale. John F. Carter acted in concert with the mayor, and assisted in preventing Neally from exercising the duties of his office. Subsequently, Neally was restored to his office by a peremptory writ of *mandamus* issued from the district court of Shawnee county. The judgment of that court was excepted to, and the proceedings were reviewed and affirmed by this court. (*Metsker v. Neally*, 41 Kas. 122.) In that case, VALENTINE, J., speaking for the court, observed:

"In fact, it is not seriously disputed by the defendants that *mandamus* would be the proper remedy to restore a party to an office from which he had been illegally removed. The same reasons given to sustain this remedy in cases of removal apply with equal force where the occupant of an office had been illegally suspended."

The authorities fully sustain the practice of this court that *mandamus* is the proper remedy to restore an officer to his office from which he has been wrongfully removed or suspended. Spelling, in his new work upon Extraordinary Relief, (¶ 1576,) says:

"*Mandamus* is the proper remedy to restore one to the full

enjoyment of an office or position of trust and emolument of a public nature from which he has been wrongfully removed, or which is wrongfully withheld.    There is an important distinction to be taken between cases where *mandamus* is sought to induct a claimant into an office already filled, and those where one actually in office has been removed or deprived of his rights and privileges therein.    In the former cases, as has been shown, the incumbency of another under such color of right as constitutes him an officer *de facto*, rather than a mere intruder, will be a complete answer to the petition; but, where one has been wrongfully deprived of an office by the illegal appointment of another, *mandamus* will issue to effect his restoration, even though such appointee be in possession *de facto*.    It is essential, however, to entitle a relator who has been removed to *mandamus* for his restoration that he be clearly entitled *de jure* to the office from which he has been removed.    It is not sufficient that he show himself to be an officer *de facto*, but he must also show a clear legal right, and his failure to do so will warrant a refusal of the peremptory writ."

See also Merrill, Mand., §§ 148, 150, and cases cited; High, Ex. Rem. (2d ed.), § 67; *People v. Scrugham*, 20 Barb. 302.

The facts alleged in the writ show that the plaintiff's term of office had not expired at the time of his removal, and also that such removal was arbitrarily made, without any sufficient cause, investigation, or trial.    Therefore, upon the facts as alleged, it appears that the defendant was wrongfully and illegally removed from his office.    If this action had been brought against J. H. McCasey alone, we would have declined the writ until the incumbent had been removed by a *quo warranto*, but this action is primarily against the board of trustees of the state charitable institutions.    The trustees not only appoint the superintendent, but are authorized to adopt such rules as may be necessary for the management of the insane asylum.    To them belongs its government.    Before any superintendent can obtain a warrant from the auditor for his salary, the voucher must be approved by the trustees. (Laws of 1879, ch. 13; Laws of 1893, ch. 1.)    If J. H. McCasey is in possession of the office room, fixtures, books,

etc., of the superintendent of the insane asylum, as stated in the writ, he has such possession under the authority of the trustees only — he is merely acting in concert with them and under their direction. (*Dew v. The Judges*, 3 Hen. & M. [Va.] 1; *Ex parte Strong, Petitioner*, 37 Mass. [20 Pick.] 484; *People v. Board of Education*, 16 N. Y. Supp. 676.)

Authorities are to the effect that where an officer voluntarily abandons an office, or when the demand for *mandamus* has become stale, no restoration can be secured by the writ. There is no statement in the writ showing that the plaintiff voluntarily abandoned his office, and his demand has not become stale by great lapse of time. There was no necessity for a forcible collision between the plaintiff and defendants over the office or the possession of the office room, books, records, etc., before the plaintiff could bring his cause in this court. (*Feizel v. Trustees*, 9 Kas. 592.) The wrongful removal is alleged to have taken place on or about the 1st of March, 1894. This action was commenced in this court in less than six months thereafter. We cannot say as a matter of law, upon the allegations of the writ, that the plaintiff has been guilty of such *laches* as to forbid him the relief he demands. The motions to quash will be overruled. The defendants will have 10 days in which to file their answers.

All the Justices concurring.

*Per Curiam:* The motions to quash the alternative writ of *mandamus* in the case of JOHN BRUN v. M. A. HOUSE-HOLDER *et al.* will be overruled, upon the authority of *Eastman v. Householder*, just decided. The defendants will have 10 days in which to file their answers.