674

(280 P.3d 795)
No. 104,859

CHURCH OF GOD IN CHRIST, INC. and KANSAS SOUTHWEST JURISDICTION CHURCH OF GOD IN CHRIST, *Appellees*, v. BOARD OF TRUSTEES OF EMMANUEL CHURCH OF GOD IN CHRIST, WICHITA, KANSAS; R.E. STIDHAM; JAMES S. RICH; DORIS WOODS; EVELYN ECHOLS; MISSY LOIS MCINTYRE; DONALD C. MCINTYRE; BRENDA STIDHAM; and JEROME FRANKLIN, *Appellants*.

Opinion filed June 8, 2012.

*JoElaine Heaven*, of Coffeyville, for appellants.

*C. Edward Watson II, Holly A. Dyer*, and *James D. Oliver*, of Foulston Siefkin, LLP, for appellees.

Before MALONE, P.J., PIERRON and BRUNS, JJ.

BRUNS, J.: This case involves a lengthy dispute over the ownership and control of real property between an international church body and one of its local congregations. The Church of God in Christ, Inc. (COGIC), a hierarchical denominational church, was granted a default judgment against the board of trustees and several individual members of Emmanuel Church of God in Christ, Wichita, Kansas (the defendants). Specifically, the district court granted injunctive relief and awarded monetary damages in favor of the COGIC. On appeal, we find that the district court did not interfere with an internal church decision that affects the faith and mission of the church itself in resolving the property dispute between the parties. We further find that the entry of default judgment was appropriate because the defendants did not answer or seek leave to file and answer out of time. Finally, we find that the award of damages by the district court was supported by substantial evidence. Thus, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

Throughout its history, Emmanuel Church—which was established as an unincorporated association in 1945—has been a member of the COGIC. The international church is organized by juris-

dictions—each of which is headed by a bishop. Since 1967, Emmanuel Church has belonged to the Kansas Southwest Jurisdiction. Currently, the Kansas Southwest Jurisdiction is administered by Bishop Joseph C. Gilkey, Sr.

From 1967 until his death in October 2004, Elder Joshua Stidham served as the pastor of Emmanuel Church. In 1972, Emmanuel Church purchased real property located at 2502 N. Mascot, Wichita, Kansas (Mascot property). Since that time, Emmanuel Church has used the Mascot property to hold worship services and to conduct other church business.

Under the terms of the constitution of the COGIC, Bishop Gilkey temporarily assumed the pastorate of Emmanuel Church following Elder Joshua Stidham's death. Thereafter, members of Emmanuel Church requested that Elder Ronald E. Stidham be named as their new pastor. Instead, Bishop Gilkey named Elder Rondell Love to serve as the new pastor of Emmanuel Church.

On October 29, 2004, Elder Ronald Stidham purported to transfer the Mascot property to an entity known as "Emmanuel Church of God in Christ Ministries and Trustees." Two days later, several members of Emmanuel Church formed a corporation called "Emmanuel Church of God in Christ, Wichita, Kansas" (the corporation). And, on November 8, 2004, the Mascot property was transferred to the newly formed corporation.

On November 28, 2004, in an attempt to remove the congregation from Bishop Gilkey's control, members of Emmanuel Church submitted a resolution to the COGIC requesting that the congregation be transferred to the Kansas Central Jurisdiction. But this request was denied by the COGIC, which found it to be improper. Thereafter, Bishop Gilkey granted Elder Love's request to be relieved from the assignment to serve as the new pastor of Emmanuel Church.

In a letter dated December 19, 2004, Bishop Gilkey advised the members of Emmanuel Church that he would remain as their pastor until he appointed a replacement for Elder Love. Two days later, Bishop Gilkey held a meeting with the members of Emmanuel Church, where he was told that the members of Emmanuel Church would not accept any pastor he might appoint. About a

week later, the chair of the corporation's board of trustees sent Bishop Gilkey a letter stating that he had no authority over Emmanuel Church and that the corporation had decided to unilaterally transfer to the Kansas Central Jurisdiction.

During the dispute, the locks were changed to the Mascot property and Bishop Gilkey was not provided keys to the new locks. On at least one occasion, the police were called to prevent Bishop Gilkey from having access to the church building. Moreover, several disruptions occurred during worship services conducted by Bishop Gilkey or his designee. The disruptions included the playing of loud music in a restroom located next to the sanctuary.

On February 10, 2005, the COGIC filed a lawsuit (the first lawsuit) against the newly formed corporation, the board of trustees, and several individual members of Emmanuel Church, seeking an injunction and further relief. Specifically, the COGIC alleged that the defendants in the case had improperly taken control of the church building and had prevented Bishop Gilkey from exercising proper control over the church property. Initially, a temporary restraining order was entered on behalf of the COGIC. But the district court subsequently entered a temporary injunction on April 13, 2005, that required the COGIC and the defendants to share the Mascot property.

The defendants in the first lawsuit filed an appeal to this court from the district court's issuance of the temporary judgment. See *Church of God in Christ v. Board of Trustees of Emmanuel Church of God in Christ*, No. 94,514, 2006 WL 2806859 (Kan. App. 2006) (unpublished opinion). A panel of this court affirmed the granting of the temporary injunction, finding that "the Bible cannot and does not guide our resolution of this appeal. Rather, our task is simply to review Kansas law and determine whether the trial court abused its discretion by issuing a temporary injunction." 2006 WL 2806859, at *3. Ultimately, this court held that the district court's conclusion that Emmanuel Church had agreed to hold the property in trust for the COGIC was supported by substantial competent evidence. 2006 WL 2806859, at *4-5.

After more than 3 years of litigation, the parties to the first lawsuit participated in mediation. In a settlement agreement dated

March 5, 2008, the parties agreed "to dismiss all claims from all parties with prejudice." Further, the parties agreed that Emmanuel Church would submit a formal request to the COGIC for transfer to the Kansas Central Jurisdiction. Additionally, Bishop Gilkey agreed not to appoint a new pastor for Emmanuel Church until either the COGIC ruled on the transfer request or 90 days, whichever occurred first. In the meantime, both parties were to remain subject to Judge Clark's injunction that required the parties to share the Mascot property.

On March 21, 2008, a journal entry was entered in the first lawsuit adopting the terms of the settlement agreement and dismissing the claims the parties had asserted against one another with prejudice. Shortly thereafter, on April 9, 2008, the COGIC denied the request of Emmanuel Church for transfer to the Kansas Central Jurisdiction. After a lengthy appeals process, the Judiciary Board of the COGIC sent a letter to Elder Ronald Stidham dated April 12, 2009, stating that Emmanuel Church would remain in the Kansas Southwest Jurisdiction. Thereafter, Bishop Gilkey was again denied access to the Mascot property.

By way of a letter dated September 9, 2009, Presiding Bishop Charles E. Blake, Sr., confirmed that Bishop Gilkey had "the authority to appoint a new pastor of [his] choosing to Emmanuel Church and shall have unfettered access to the Emmanuel Church premises to supervise and manage the church until a pastor is appointed." On September 27, 2009, Bishop Gilkey sought to address the members of Emmanuel Church prior to a worship service but was not allowed to do so. At the conclusion of the service, Bishop Gilkey had counsel for the Kansas Southwest Jurisdiction read Presiding Bishop Blake's letter to the few congregants who remained.

After the letter was read, Bishop Gilkey requested the keys and alarm code to the Mascot property. When his request was denied, Bishop Gilkey indicated that he would not leave the church building, so a member of Emmanuel Church set the alarm. Although the Wichita police responded to the alarm, they would not require members of Emmanuel Church to provide Bishop Gilkey with access to the building unless a new order was entered by the district court.

On October 8, 2009, the COGIC filed the present lawsuit. A temporary injunction was entered by the district court following a hearing held on October 30, 2009. Prior to the temporary injunction hearing, the defendants filed two motions to dismiss. The first motion sought a dismissal of the entire case, arguing that the settlement agreement entered into during the first lawsuit resolved all of the COGIC's claims against them. The second motion sought dismissal of Brenda Stidham. Both of the motions for dismissal were ultimately denied.

The COGIC filed a first amended petition on November 12, 2009, setting forth six causes of action against the defendants. Specifically, the COGIC asserted claims for trespass, tortious interference with property rights, quiet title, conversion, misappropriation of name, and breach of contract. In the prayer for relief, the COGIC sought a permanent injunction granting it "access to and control" of real and personal property—including the use of the name Emmanuel Church of God in Christ and Emmanuel Church of God in Christ, Wichita, Kansas. The COGIC also sought to have the defendants "cede control of the corporation" and appoint the new pastor appointed by the jurisdictional bishop as the chief executive officer. In addition, the COGIC asked that the district court quiet the title to the Mascot property and sought to recover compensatory damages from the defendants.

On February 22, 2010, the COGIC filed a motion for default judgment because the defendants had failed to file an answer to the first amended petition. Although the defendants filed a response to the motion for default, they still did not file an answer nor did they seek leave to file an answer out of time. Finally, on March 26, 2010, a hearing was held by the district court to consider the motion for default.

At the hearing, counsel for the defendants argued that the district court should have given her a date upon which to file an answer. Although it acknowledged that it did not give the defendants a deadline by which they were to file an answer, the district court rejected the idea that it was obligated to do so when the time to answer is set forth in the rules of civil procedure. Counsel for the defendants further argued that the filing of an answer would

simply be a technicality in this case because the COGIC already knew her clients' position. The district court also rejected this argument and found that the failure of the defendants to answer required the entry of default judgment.

On April 29, 2010, a journal entry of default judgment and permanent injunction was entered by the district court. In the journal entry, the district court found that "defendants failed to file a written request for an extension of time in which to file their answer or other response explaining defendants' failure to answer." The district court also noted "that the defendants did not present at [the hearing on the motion for default] a proposed answer . . . ." Furthermore, the district court found "that defendants' failure to answer is not an isolated incident and that on other occasions they have failed to comply with the rules of civil procedure or have conducted themselves in a manner that delays the progression of the litigation."

The journal entry of default judgment also set forth the terms of the permanent injunction. Specifically, the district court granted the COGIC "access and control" over the Mascot property. It also removed the board of trustees of the corporation, and named the new pastor appointed by Bishop Gilkey—Elder Tony Gentry—as the chief executive officer of the corporation. Although the defendants were allowed to attend services and activities at the Mascot property, they were prohibited from taking any action to interfere with the COGIC's right to control the property. Finally, the journal entry set an evidentiary hearing for May 18, 2010, to determine the amount of compensatory damages to be awarded.

At the start of the hearing on May 18, 2010, the district court asked whether the defendants had filed a motion to set aside the default judgment. Counsel for the defendants replied that no motion had been filed. The district court then heard evidence related to the damages suffered by the COGIC as a result of being excluded from the Mascot property, including the testimony of an expert on real estate valuations. At the conclusion of the hearing, the district court stated that it would award damages in the amount of $2000 a month from October 29, 2004, to April 13, 2005, and from April 2009, through September 30, 2009.

In a journal entry entered on July 12, 2010, the district court took judicial notice of the record in the first lawsuit. It also found that the COGIC is "entitled to $24,000 in compensatory and monetary damages for the intentional conduct of the defendants in depriving [the COGIC] of their exclusive use of the property in question." Further, the district court ordered the defendants to provide the COGIC with certain financial information and granted them until July 31, 2010, to pick up any of the personal items located on the Mascot property.

Thereafter, the defendants timely filed a Notice of Appeal.

## Analysis

*Subject Matter Jurisdiction—Civil v. Ecclesiastical Matters*

On appeal, the defendants contend that civil courts lack subject matter jurisdiction over the issues presented in this case because they arise out of the appointment of a pastor. In response, the COGIC contends that this case involves a dispute over property rights—not a dispute about the right to appoint a pastor. Whether this court has subject matter jurisdiction is a question of law subject to unlimited review. See *Kansas Medical Mut. Ins. Co. v. Svaty*, 291 Kan. 597, 609, 244 P.3d 642 (2010).

The First Amendment to the United States Constitution states, in part, that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." Similarly, Section 7 of the Kansas Constitution Bill of Rights states, in part, that "[t]he right to worship God according to the dictates of conscience shall never be infringed; nor shall any person be compelled to attend or support any form of worship; nor shall any control of or interference with the rights of conscience be permitted . . . ."

"The Establishment Clause prevents the Government from appointing ministers, and the Free Exercise Clause prevents it from interfering with the freedom of religious groups to select their own." *Hosanna-Tabor Evangelical Lutheran Church and School v. EEOC*, 565 U.S. ___, 132 S. Ct. 694, 703, 181 L. Ed. 2d 650 (2012). Moreover, "the First Amendment 'permit[s] hierarchical religious organizations to establish their own rules and regulations

for internal discipline and government, and to create tribunals for adjudicating disputes over these matters.' " 132 S. Ct. at 705 (quoting *Serbian Eastern Orthodox Diocese for United States and Canada v. Milivojevich*, 426 U.S. 696, 724, 96 S. Ct. 2372, 49 L. Ed. 2d 151 [1976]).

"The jurisdiction of the courts to address matters involving church affairs is limited." *Church of God in Christ v. Bd. of Trustees*, 26 Kan. App. 2d 569, 572, 992 P.2d 812 (1999). Neither state nor federal courts may undertake " 'the resolution of quintessentially religious controversies, whose resolution the First Amendment commits exclusively to the highest ecclesiastical tribunals' of the Church." 132 S. Ct. at 705 (quoting *Milivojevich*, 426 U.S. at 720). Thus, "[p]urely theological questions and matters ecclesiastical in character must be determined by the authorities of the particular church involved according to its laws and usage." *New Jerusalem*, 26 Kan. App. 2d at 572.

Clearly, this court does not have subject matter jurisdiction over issues relating to the selection of a pastor or minister. See *Hosanna-Tabor*, 132 S. Ct. at 706. ("According the state the power to determine which individuals will minister to the faithful . . . violates the Establishment Clause, which prohibits government involvement in such ecclesiastical decisions."). "However, when church-related controversies involve civil or property rights, the civil courts will take jurisdiction and decide the merits of the case in order to assure regularity of business practices and the right of private use and ownership of property." *New Jerusalem*, 26 Kan. App. 2d at 572 (citing *Gospel Tabernacle Body of Christ Church v. Peace Publishers & Co.*, 211 Kan. 420, 422, 506 P.2d 1135, *reh. denied* 211 Kan. 927, 508 P.2d 849 [1973]).

In the present case, the question of Bishop Gilkey's authority to appoint a pastor for Emmanuel Church is related to the property dispute. But the two issues are distinguishable. Although the dispute between the parties over the authority to appoint or call a pastor is an ecclesiastical issue, the dispute over property rights is a civil issue. Therefore, we conclude that the district court had subject matter jurisdiction to resolve the property dispute and we have subject matter jurisdiction to consider this appeal.

*Entry of Default Judgment*

We review a district court's entry of default judgment for abuse of discretion. See *Bazine State Bank v. Pawnee Prod. Serv., Inc.,* 245 Kan. 490, Syl. ¶ 1, 781 P.2d 1077 (1989); *Lara v. Vasquez,* 33 Kan. App. 2d 128, 130-31, 98 P.3d 660 (2004). "An abuse of discretion will be found only when no reasonable person would take the view of the trial court." *First Nat'l Bank in Belleville v. Sankey Motors, Inc.,* 41 Kan. App. 2d 629, 634, 204 P.3d 1167 (2009).

K.S.A. 60-255(a) provides that "[u]pon request and proper showing by the party entitled thereto, the judge *shall* render judgment against a party in default." (Emphasis added.) And "[f]ailure to answer is prima facie a default." *Bazine State Bank,* 245 Kan. at 493. Furthermore, all of the allegations set forth in a petition "are admitted when not denied in the responsive pleading." K.S.A. 60-208(d).

Here, it is undisputed that the defendants did not file an answer nor did they seek leave to file an answer out of time. Although the defendants filed two motions to dismiss, both were denied. As such, they had 10 days after the motions to dismiss were denied to file an answer or other responsive pleading. K.S.A. 60-212(a)(1). When they failed to do so, the COGIC moved for a default judgment under K.S.A. 60-255(a), and the district court appropriately held a hearing on the motion.

In granting default judgment, the district court found that the defendants had not adequately explained why they failed to file an answer. The district court also found that the failure to answer was not an isolated incident and that the defendants had failed to comply with the rules of civil procedure on other occasions. Likewise, the district court found that the defendants had delayed the progression of the litigation. Thus, we conclude that the district court did not abuse its discretion by entering a default judgment in this case.

It is also important to recognize that the defendants did not file a motion to set aside the default judgment. As a general rule, an issue not raised below cannot be raised on appeal. See *In re Care & Treatment of Miller,* 289 Kan. 218, 224-25, 210 P.3d 625 (2009).

As such, the defendants did not preserve their objections to the district court's entry of default judgment for appeal.

Long before the adoption of the code of civil procedure, the Kansas Supreme Court held that a default judgment could be set aside if it was clearly erroneous on its face—even when no motion to set aside has been filed. See *Williams v. Shrock*, 118 Kan. 347, 235 P. 111 (1925). Although it is questionable whether this is still true, the result would be the same even if we were to review the default judgment under a clearly erroneous standard. For the same reasons we concluded that the district court did not abuse its discretion, we also find that the default judgment entered by the district court was not clearly erroneous.

*Res Judicata and Collateral Estoppel*

The defendants contend that the district court should have dismissed this case based on res judicata and collateral estoppel. In response, the COGIC contends that these affirmative defenses have been waived because the defendants failed to raise these affirmative defenses in an answer. Likewise, the COGIC contends that because these affirmative defenses were waived, they cannot be considered on appeal.

Res judicata and collateral estoppel are affirmative defenses. K.S.A. 60-208(c); see *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011). Under K.S.A. 60-208(c), affirmative defenses must be set forth in a defendant's answer. If an affirmative defense is not asserted in an answer, it is waived. *Turon State Bank v. Bozarth*, 235 Kan. 786, Syl. ¶ 1, 684 P.2d 419 (1984); *Coffman v. State*, 31 Kan. App. 2d 61, 67, 59 P.3d 1050 (2002).

An argument is abandoned on appeal if it is not supported with pertinent authority. See *State v. Berriozabal*, 291 Kan. 568, 594, 243 P.3d 352 (2010). In the present case, the defendants have failed to come forward with any authority suggesting that their affirmative defenses were not waived by their failure to file an answer or other responsive pleading. In fact, the defendants do not even mention the waiver issue in their brief. Accordingly, we conclude that because the defendants did not file an answer, the af-

firmative defenses of res judicata and collateral estoppel have been waived as a matter of law.

*Failure to Name Corporation as a Party*

The defendants further contend that the default judgment should be reversed because the corporation that purportedly holds the title to the Mascot property was not named as a party to this action. In response, the COGIC contends that the default judgment is valid as to the defendants. Likewise, the COGIC points out that its first amended petition sought to have the district court disregard the corporation that it alleged was wrongfully created by the defendants and to quiet the title to the Mascot property. And it points out that it only sought to be declared the beneficial owner of the corporation in the alternative.

According to the COGIC's constitution, member congregations hold property in trust for the benefit of the COGIC. Specifically, the pertinent language in the constitution—which was quoted in *Church of God in Christ v. Board of Trustees of Emmanuel Church of God in Christ*, 2006 WL 2806859, at *4, and in *New Jerusalem*, 26 Kan. App. 2d at 574—states:

> " 'Real estate or other property may be acquired by purchase, gift, devise, or otherwise by local churches. Where real or personal property is acquired by deed, the instrument of conveyance *shall* contain the following clause, to wit: The said property *is held in trust for the use and benefit of the members of the Church of God in Christ* with National Headquarters in the City of Memphis, Shelby County, Tennessee, and subject to the Charter, Constitution, Laws and Doctrines of said Church, now in full force and effect, or as they may be hereafter amended, changed or modified by the General Assembly of said Church.' " (Emphasis added.)

Here, the Mascot property was purportedly deeded to another unincorporated association on October 29, 2004. But the transferring deed did not contain the required trust language. Then, on November 1, 2004, a new corporation was formed and a few days later the Mascot property was purportedly deeded to the newly formed corporation. Once again, the deed did not contain the COGIC's required trust language.

The facts in the present case are nearly identical to the facts in *New Jerusalem*, 26 Kan. App. 2d at 575. Under the COGIC rules,

a local church is permitted to incorporate. But incorporating does not change the trust relationship that exists between the local church and the COGIC. When the defendants decided to create a corporation and deed the Mascot property to it, they were still required to hold ownership of the property in trust for the national church. 26 Kan. App. 2d at 580. As this court held in *New Jerusalem*, "a continual, longstanding, and formal affiliation with the National Church . . . is sufficient to support an implied trust in favor of the National Church." 26 Kan. App. 2d at 580. Thus, under *New Jerusalem*, the COGIC continued to be entitled to possession of the property regardless of the corporate status of the local church.

Moreover, "[a] court of equity is not obliged to render the specific relief prayed for but may make such a decree as justice demands, under all the facts and circumstances as disclosed by the evidence." *Kline v. Orebaugh*, 214 Kan. 207, 211, 519 P.2d 691 (1974). "One of the remedies afforded in equity for a breach of trust is known as the 'trust pursuit rule.' " If a trustee in breach of trust transfers trust property to a person or entity that has notice of the trust, the transferee holds the property subject to the trust. 214 Kan. at 211.

Likewise, a constructive trust may be imposed as an equitable remedy where property subject to a trust has been improperly transferred. See *Nelson v. Nelson*, 288 Kan. 570, 579-80, 205 P.3d 715 (2009). "[A] constructive trust remedy is essentially a tracing remedy, allowing recovery of the specific asset or assets taken from the plaintiff, any property substituted for it, and any gain in its value." 288 Kan. at 580 (citing 1 Dobbs, Law of Remedies § 4.3[1], pp. 588-89 [2d ed. 1993]). Here, the trustee defendants did not have authority to transfer the Mascot property to the new corporation without including the mandatory trust language in the deed.

The trustee defendants also did not have the authority to prohibit the COGIC or its designees from having access to the Mascot property. And it has long been held that it is appropriate to bring an action against the trustees to prohibit a local church from excluding officers of a national hierarchical church—even when the local church is incorporated. See *Feizel v. Trustees German M.E.*

*Society*, 9 Kan. 592, 596-97, 1872 WL 661 (1872); *St. Paul Church, Inc. v. United Methodist Church*, 145 P.3d 541, 558-59 (Alaska 2006).

An individual is not insulated from liability for wrongful acts made in an individual capacity simply because he or she is a member of a corporation. See *Kansas Comm'n on Civil Rights v. Service Envelope Co.*, 233 Kan. 20, 27, 660 P.2d 549 (1983). Moreover, the court can disregard a corporation when individuals use it to promote injustice or fraud. See *Sampson v. Hunt*, 233 Kan. 572, Syl. ¶ 3, 665 P.2d 743 (1983). As previously discussed, the trustee defendants transferred the property multiple times and formed the corporation in an attempt to avoid their trust obligation to the COGIC. We, therefore, conclude that the district court could properly trace or pursue the trust property and award the COGIC control of the corporation and the building without the necessity of making the corporation a party.

*Award of Damages*

Finally, the defendants challenge the award of damages in the amount of $24,000. Where, as in the present case, a hearing was held on the amount of damages following the entry of a default judgment, our review is limited to whether there is substantial evidence in the record to support the district court's findings and conclusions. See *Mansfield Painting & Decorating, Inc. v. Budlaw Services, Inc.*, 3 Kan. App. 2d 77, 84, 589 P.2d 643 (1979).

The COGIC sought compensatory damages in its first amended petition against each of the defendants—jointly and severally—for trespass, tortious interference, conversion, misappropriation of name, and breach of contract. In light of the default judgment, each of the defendants was found to be liable on all of the claims asserted by the COGIC. As such, although some of the defendants were not trustees of Emmanuel Church, there were allegations in the first amended petition that each of them had acted in one or more ways to interfere with the COGIC's property rights. And as a result of the defendants' failure to answer, each of the allegations contained in the first amended petition was deemed to be admit-

ted. Thus, the only issue reviewable on appeal is the amount of damages.

At the damage hearing, the COGIC presented the unopposed testimony of an expert witness, who valued the loss of use of the Mascot property as a result of the wrongful acts committed by the defendants at $2,000 a month. After considering the evidence, the district court awarded damages for the period of October 29, 2004, to April 13, 2005, and for the period of April 2009 through September 30, 2009—for a total damage award of $24,000. Accordingly, we conclude that there was substantial evidence presented by the COGIC to support the district court's award of damages.

Affirmed.