NOT DESIGNATED FOR PUBLICATION

No. 115,848

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

JESSICA TREVINO,
*Appellee*,

v.

MERLIN TROUTMAN and DELORIS TROUTMAN,
*Appellants*.

MEMORANDUM OPINION

Appeal from Sedgwick District Court; CHRISTOPHER M. MAGANA, judge. Opinion filed May 19, 2017. Affirmed in part and remanded with directions.

*Ryan E. Hodge*, of Ray Hodge & Associates, LLC, of Wichita, for appellants.

*Glenn D. Young, Jr.*, of Young, Bogle, McCausland, Wells & Blanchard, P.A., of Wichita, for appellee.

Before LEBEN, P.J., PIERRON and BRUNS, JJ.

*Per Curiam*: Jessica Trevino, a tenant, filed a lawsuit against Merlin Troutman and Deloris Troutman, landlords, and argued they had converted her property in violation of K.S.A. 58-2565(d) and the reasonable value of her converted property was $31,558.50. The district court found the Troutmans were liable for the damages. The Troutmans appeal and argue: (1) Trevino's claim should have been dismissed because it was precluded by the ruling in the prior eviction case regarding her personal property; (2) the district court failed to apply the correct standard in determining the value of Trevino's

1

personal property; and (3) the district court erroneously admitted evidence that was not relevant to the material issues of the case.

Trevino's claim was not precluded, as the two claims did not meet the required elements of res judicata. The district court did not look at the market value of the personal property at the time of conversion, and therefore used the inappropriate standard in determining the value of Trevino's personal property. Lastly, while the evidence admitted regarding the state of the rental property was irrelevant to the issues of the case, it was harmless error. We affirm in part and remand.

On December 27, 2012, Jessica Trevino entered into a rental agreement with the Troutmans for the property at 233 N. Pennsylvania in Wichita. A little over a year later on February 14, 2013, the Troutmans filed a case to evict Trevino and her cotenant, Christopher Sontag, from the rental property. On April 4, 2013, Trevino sought an order that required the Troutmans to make repairs to the rental property or, in the alternative, allow 30 days for them to move.

On April 15, 2013, the Troutmans obtained an order for the eviction to recover past rent and forcible detainer of Trevino and Sontag. The Troutmans also obtained a writ of restitution and execution and evicted Trevino and Sontag from the rental. The Troutmans changed the locks on the rental home and removed all the personal property that belonged to Trevino and Sontag.

Trevino appeared in court on April 19, 2013, on a hearing for her order filed in the eviction case. The court granted her order, which required the Troutmans to return her personal property immediately. Law enforcement was to assist with the order.

Both parties arranged to meet at the Troutmans' home on the afternoon of April 19, 2013, so Trevino and Sontag could obtain their personal property. The Troutmans

wanted Trevino to sign an agreement that she and Sontag had received all of their property. Trevino refused to sign because she was not allowed to search through the property and could see that not all of her property was there. Trevino left the Troutmans without obtaining any of her or Sontag's personal property.

Two years later, Trevino filed this case and alleged the Troutmans had failed to comply with the requirements of K.S.A. 58-2565. She also alleged the value of her personal property was $31,558.50. The Troutmans filed 2 motions and claimed Trevino's property was the subject of a valid order in the eviction action. The Troutmans filed a motion to clarify and consolidate on December 9, 2015, and a motion to dismiss on January 25, 2016. The district court denied the motion to clarify and consolidate on January 15, 2016, and found the eviction case was no longer pending on appeal and K.S.A. 60-242 allowed consolidation of the pending case only. The court denied the motion to dismiss on April 4, 2016, and found the Troutmans' conversion of the property was separate from any alleged noncompliance by them from the court order.

At trial, the district court heard extensive evidence regarding the value of Trevino's personal property. The court received Plaintiff's Exhibit 28 which reflected the purchase price of the couch at $439 and the love seat at $395. Plaintiff's Exhibit 29 was also admitted into evidence, which reflected the property in the rental home and the estimated item cost/value for each piece of property. The total estimated value for all the contents in this exhibit was $31,480.49. Trevino testified it would cost her $31,000 to replace everything that the Troutmans had taken. At Trevino's deposition, she testified that if her property were sold in a garage sale or a pawn shop she would likely get a very low price. She was asked whether she would get $5,000 or $10,000 and her answer was maybe.

The district court also heard evidence regarding the condition of the rental property. Sontag testified there were problems with the water heater, electricity, and

3

breaker box. He stated the Troutmans never came out to fix the breaker box. The water heater was never fixed. Sontag and Trevino had to heat water in an electric skillet for cooking, washing dishes, and bathing the children.

Trevino's mother testified there were problems with the water heater and Sontag and Trevino showered at her home. Sontag's mother testified to that information as well.

Trevino testified the problems with the property included the water heater and the breaker box. She stated she had spoken with the Troutmans about the problem with the water heater every time he collected rent. Counsel for the Troutmans requested a running objection to this information.

After the trial, the district court found Merlin Troutman had "offered no evidence that he complied with K.S.A. 58-2565(d)." The court found the Troutmans were liable for the damages Trevino had suffered for her loss. Further, the court stated Trevino proved that it was more likely true than not that the property did exist, that it was gone, and she should recover the reasonable value of her furniture and personal belongings. Ultimately the court determined the best evidence of the fair and reasonable value of the property Trevino had lost was $30,980.00.

On appeal, the Troutmans argue that (1) Trevino's claim should have been dismissed because it was precluded by the ruling in the prior eviction case regarding her personal property; (2) the district court failed to apply the correct standard in determining the value of Trevino's personal property; and (3) the district court erroneously admitted evidence that was not relevant to the material issues of the case.

The Troutmans first argue that Trevino's claim should have been dismissed because it was precluded under res judicata by the ruling in the prior eviction case.

4

Whether the doctrine of res judicata applies in a certain case is an issue of law over which appellate courts exercise plenary review. *Cain v. Jacox*, 302 Kan. 431, 434, 354 P.3d 1196 (2015). The doctrine of res judicata is a common law rule of equity based on notions of justice and in sound public policy. 302 Kan. at 434.

Res judicata prevents relitigation when the following conditions occur: (1) identity in the thing sued for, (2) identity of the cause of action, (3) identity of persons and parties to the action, and (4) identity in the quality of persons for or against whom claim is made. *State v. Robertson*, 298 Kan. 342, 344, 312 P.3d 361 (2013); *Waterview Resolution Corp. v. Allen*, 274 Kan. 1016, 1023, 58 P.3d 1284 (2002); *Shelton v. DeWitte*, 271 Kan. 831, 836-37, 26 P.3d 650 (2001) (doctrine of res judicata prevents splitting single cause of action or claim into two or more suits). The doctrine bars a successive suit if the following four elements are met: "(a) the same claim; (b) the same parties; (c) claims that were or could have been raised; and (d) a final judgment on the merits." *Cain*, 302 Kan. at 434 (quoting *In re Tax Appeal of Fleet*, 293 Kan. 768, Syl. ¶ 2, 272 P.3d 583 [2012]).

Res judicata and collateral estoppel are affirmative defenses. K.S.A. 2016 Supp. 60-208(c); see *Estate of Belden v. Brown County*, 46 Kan. App. 2d 247, 262, 261 P.3d 943 (2011). Under K.S.A. 2016 Supp. 60-208(c), affirmative defenses must be set forth in a defendant's answer. If an affirmative defense is not asserted in an answer, it is waived. *Church of God in Christ, Inc. v. Board of Trustees*, 47 Kan. App. 2d 674, 685, 280 P.3d 795 (2012).

The Troutmans argue that Trevino asserted in this lawsuit a matter that had been asserted in the first lawsuit and by ignoring claim preclusion this created a "patently unfair" situation. Trevino argues the claim is not precluded here because the cause of action was different in the prior eviction case from the action brought here under K.S.A. 58-2565(d).

The first case was brought through a motion on April 4, 2013, when Trevino sought an order to compel the Troutmans to repair the hot water heater or for an order granting her 30 days to move. A hearing was held on this motion on April 19, 2013. The district court granted Trevino an order to retrieve her personal property from the Troutmans and directed law enforcement to assist in enforcing the order.

Trevino asserted that the Troutmans converted her property to their own use or destroyed said property in violation of K.S.A. 58-2565(d). In pertinent part, this statute states:

> "If the tenant abandons or surrenders possession of the dwelling unit and leaves household goods, furnishings, fixtures or any other personal property in or at the dwelling unit or if the tenant is removed from the dwelling unit as a result of a forcible detainer action . . . and fails to remove any household goods, furnishings, fixtures or any other personal property in or at the dwelling unit after possession of the dwelling unit is returned to the landlord, the landlord may take possession of the property, store it at tenant's expense and sell or otherwise dispose of the same upon the expiration of 30 days after the landlord takes possession of the property. . . . During such 30 [30-day] period after the landlord takes possession of the property, and at any time prior to sale or other disposition thereof, the tenant may redeem the property upon payment to the landlord of the reasonable expenses incurred by the landlord of taking, holding and preparing the property for sale and of any amount due from the tenant to the landlord for rent or otherwise." K.S.A. 58-2565(d)

In order for this suit to be barred, this case must have the same claim, the same parties, claims that were or could have been raised, and a final judgment on the merits. *Cain*, 302 Kan. at 434. For the first element—same claim—it is clear the claim in the previous case and this case are not the same. In the first case, Trevino sought an order to compel the Troutmans to fix the hot water heater or allow her to move out in 30 days. Here, Trevino argues the Troutmans converted her property in violation of K.S.A. 58-

6

2565(d). This destroys the possibility of res judicata as all four elements must be met. However, if we continued, it is clear the second element is met because the same parties involved in the previous case are involved in this one as well. Third, this claim could not be raised in the first claim because Trevino was not aware that there was a potential violation of K.S.A. 58-2565(d) until she went to the Troutmans in an attempt to retrieve her personal property. Finally, there was a final judgment for the previous case, but it was not related to the K.S.A. 58-2565(d) claim.

The claims in this case were not precluded under res judicata, as they did not meet the required elements. The claim should not have been dismissed and the district court is affirmed.

The Troutmans next contend the district court did not apply the appropriate standard in determining the value of Trevino's personal property. The determination of whether the court applied the incorrect measure for damages is a question of law over which appellate courts exercise unlimited review. *Werdann v. Mel Hambelton Ford Inc.*, 32 Kan. App. 2d 118, 124, 79 P.3d 1081 (2003).

Conversion is defined as "the unauthorized assumption or exercise of the right of ownership over goods or personal chattels belonging to another to the exclusion of the other's rights. [Citation omitted.]" *Gillespie v. Seymour*, 14 Kan. App. 2d 563, 571-72, 796 P.2d 1060 (1990). The general rule of law in Kansas is that the measure of damages based on a conversion claim is the "fair and reasonable market value of the property converted at the time of the conversion." *Werdann*, 32 Kan. App. 2d at 124.

Market value means "'the price for which an article is bought and sold, and is ordinarily best established by sales in the ordinary course of business.'" *Airight Sales, Inc., v. Graves Truck Lines, Inc.*, 207 Kan. 753, 756, 486 P.2d 835 (1971). In order for the item to have market value, there must be a market for such a commodity. 207 Kan. at

7

756. Where there is no demand for the item, it cannot be said to have a market value. 207 Kan. at 756.

The burden of proving the damages rests with Trevino. *Belot v. Unified School Dist. No. 497, Douglas County*, 27 Kan. App. 2d 367, 370, 4 P.3d 626 (2000). It is the function of the district court to determine the amount of damages that should be awarded based on evidence of the loss suffered by the party. 27 Kan. App. 2d at 370.

Here, the district court determined the best evidence of the fair and reasonable value of Trevino's lost property was $30,980, and that the Troutmans were liable for the loss. This was based on the exhibits and testimony presented at trial. In Kansas, it is recognized that an owner is a competent witness to testify as to the value of his or her property. *City of Wichita v. Sealpak Co., Inc.*, 279 Kan. 799, 802, 112 P.3d 125 (2005). The Troutmans argue the standard for the valuation of Trevino's property is "actual cash value" and not "replacement value."

The Troutmans note that the district court relied on *A.,T. & Santa Fe Rld. Co. v. Stanford*, 12 Kan. 354, 366, 1874 WL 637 (1874), which stated property may have a value for which the owner may recover if it be negligently destroyed, although it may have no market value. The court also cited to *Airtight Sales, Inc. v. Graves Truck Lines Inc.*, 207 Kan. at 757, for the notion that reproduction or replacement cost is relevant if the property has some unique quality that makes it valuable to the owner. In its findings of fact, the court stated it placed no sentimental value on the items listed in Trevino's inventory list.

After reviewing the evidence presented to the district court at trial, there are a few glaring issues with the cost estimates. First, in Plaintiff's Exhibit 28, Trevino's love seat and sofa are listed on a receipt from 2011. The receipt states the total cost of the furniture in 2011 was $1,001.11. Then, on the inventory list, Trevino listed the cost estimate of the

8

furniture at $1,500.00. The court reduced the cost of the furniture by $500 from the inventory sheet due to the cost listed on the 2011 receipt. However, if Trevino were to sell her love seat and sofa at the time the conversion took place took place in 2013, it would not sell for the purchase price in 2011. The furniture had 2 years of use in a family with two adults and six children. The market value of the furniture at the time of conversion would be significantly less than the purchase price in 2011. The court erroneously determined the cost of these items when it set the value of the furniture at $1,001.11 because it used the purchase price and not the market value at the time of conversion.

Because the district court did not determine the market value at the time of conversion for the furniture, and instead relied on the 2011 receipt purchase price, this issue is remanded for the district court to use the appropriate standard in determining the value of those items of Trevino's personal property.

The Troutmans finally argue that the district court admitted irrelevant evidence and that evidence unfairly prejudiced them.

First, the district court must determine whether the evidence is relevant. Generally speaking, all relevant evidence is admissible. K.S.A. 60-407(f). K.S.A. 60-401(b) defines relevant evidence as evidence having "''any tendency in reason to prove any material fact.'" [Citation omitted.]" *State v. Page*, 303 Kan. 548, 550, 363 P.3d 391 (2015). This definition encompasses two elements:  a materiality element and a probative element. Standards of review for each element vary.

Evidence is material when the fact it supports is in dispute or in issue in the case. *In re Acquisition of Property by Eminent Domain*, 299 Kan. 37, 44, 320 P.3d 955 (2014). The appellate standard of review for materiality is de novo. *Page,* 303 Kan. at 550.

9

Evidence is probative if it has any tendency to prove any material fact. *State v. Dupree*, 304 Kan. 43, 64, 371 P.3d 862 (2016). An appellate court reviews the district court's assessment of the probative value of evidence under an abuse of discretion standard. *State v. Page*, 303 Kan. at 550-51.

Here, The Troutmans argue the evidence regarding the condition of the rental property was "completely immaterial" to the issues of the case. They further argue the evidence prejudiced the court against them and caused the court to award damages far higher than the market value of Trevino's property.

The issues in this case were whether the Troutmans converted Trevino's property in violation of K.S.A. 58-2565(d) and the value of the personal property converted. The information regarding the condition of the rental property was not material or probative and did not have a tendency to prove a material fact for the issues at hand. The condition of the rental property did not have any bearing on the K.S.A. 58-2565(d) violation or the value of the personal property, therefore it was not relevant to the issues in front of the court.

The erroneous admission of evidence is subject to review for harmless error under K.S.A. 2016 Supp. 60-261. *State v. Longstaff*, 296 Kan. 884, 895, 299 P.3d 268 (2013). However, if the error implicates a constitutional right, the effect of that error must be assessed under the constitutional harmless error standard: whether the party benefiting from the error proves beyond a reasonable doubt that the error would not or did not affect the outcome of the trial in light of the entire record. *State v. Santos-Vega*, 299 Kan. 11, 23-24, 321 P.3d 1 (2014).

While the testimony regarding the condition of the rental property was not relevant to the issues presented to the district court, the admission of this evidence was harmless error. The Troutmans' substantial rights were not affected by the error. See K.S.A. 2016

10

Supp. 60-261. The evidence did not prejudice the district court against the Troutmans and cause it to award higher damages for the value of Trevino's property. As stated in the previous issue, the court used the incorrect standard in determining the value of the property converted. The background information was not relevant to the issues, but it was harmless and did not unfairly prejudice the Troutmans.

Affirmed in part and remanded with directions.